THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
EUGENE HARRIS, Defendant-Appellant.

First District (1st Division)   No. 1—86—1956

Opinion filed April 10, 1989.

Michael J. Pelletier and Thomas Long, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Catharine M. Forest, and Eileen Rubin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Defendant, Eugene Harris, was convicted of delivery of a controlled substance and sentenced to nine years' imprisonment. Defendant appeals from his conviction, contending (1) the State improperly excluded blacks from the jury after defense counsel objected to the State's use of its peremptory challenges; and (2) the prosecutor made improper comments during cross-examination and closing argument that the defendant had coerced a witness into providing testimony.

At trial, Chicago police officer Nancy Stokilo testified that on June 28, 1984, while working as an undercover plain clothes officer, she telephoned Kenneth Steele, an individual from whom she had made five prior narcotics purchases. During this conversation, Stokilo arranged to meet Steele in a parking lot at 6:30 p.m. and to purchase two ounces of cocaine for $2,600. After speaking with her surveillance team, Stokilo arrived at the parking lot at 6:25 p.m. and waited for Steele to arrive. At 6:30 p.m. Steele walked into the parking lot, entered Stokilo's car and told her that the defendant, whom he referred to as "his man Gene," would be there in a few minutes. Approximately 20 minutes later, Stokilo left her car and went into a grocery store where she told a member of her surveillance team that if the defendant did not show up shortly, Steele said that he would call him. Shortly after Stokilo returned to the car, Steele went across the street to call defendant from a pay telephone and told her to talk to the defendant. After this conversation, Stokilo and Steele proceeded to drive to Steele's house, where Steele said defendant wanted to do the deal.

At approximately 8:30 p.m., after Stokilo and Steele had waited outside of Steele's house for approximately an hour, the defendant drove up. After introducing himself, the defendant told Stokilo to fol-

low him to one of the apartment buildings he owned where they would complete the sale. Stokilo began to follow the defendant in her car until she realized that her surveillance team had been cut off by a passing train. Stokilo went back to the parking lot where she had originally met Steele. A few minutes later, the defendant walked up to Stokilo's car and told her that he had to get the cocaine from his brother and that he would be back in five minutes and she should have the money ready.

When defendant returned, Stokilo testified that he instructed Steele to get into the backseat in order that he could sit in the front seat passenger side. Defendant reached into the waist belt of his shorts and pulled out a clear plastic bag containing a white powder which he handed to Stokilo. Stokilo gave defendant $700 and told defendant that the remainder of the money was in the trunk. Stokilo went to the trunk to retrieve the money. The closing of the trunk was a prearranged signal to the surveillance team, who arrived at the car as Stokilo reentered it. The officers arrested both the defendant and Steele.

Defendant testified that on June 28, 1984, he first saw Kenneth Steele at 2 p.m. when he went to Steele's home to buy $5 worth of marijuana. At that time he was introduced to Officer Stokilo, who was in her automobile in front of the building. After Steele told defendant that he would not be able to purchase the marijuana until later that day, the defendant drove to a tavern where he remained until approximately 3:45 p.m. After that defendant stated he proceeded to another tavern. Between 8:30 p.m. and 9 p.m. defendant testified that he left the tavern and saw Steele driving an automobile. Defendant told Steele that he still wanted the marijuana, and Steele told him to follow him to a parking lot. Defendant stated that Steele introduced Officer Stokilo as his girlfriend. Defendant stated that Steele got in the back seat of the car and he sat in the front seat and Steele handed Stokilo a brown bag from which she sniffed twice. Defendant asked Steele what was going on, to which he responded "[B]e cool." Officer Stokilo placed some money by defendant's legs. Steele grabbed the money, counted it, and asked for the remainder. As Stokilo went to the trunk to obtain the remainder of the money, defendant told Steele that he would see him later and opened the door and was leaving the vehicle when the police arrived and arrested him.

Kenneth Steele testified that he had known the defendant for a couple of years. He stated that on June 28, 1984, defendant came by his home at approximately 2 p.m. to purchase some marijuana. Steele told defendant he would have some marijuana later that day and the

defendant left. At approximately 4 p.m. Steele stated that he was waiting in a parking lot with Stokilo when he saw defendant come out of a tavern. Steele waved the defendant over and told him that he had some business to take care of and that defendant should get back to him later concerning the marijuana. After a short period of time, Steele testified that he crossed the street and made a telephone call to his connection, Bernard Welch, and had Officer Stokilo talk to Welch. Bernard Welch was recently deceased at the time of trial. At approximately 6 p.m. Steele testified that he got into a car driven by Welch and Welch gave him two ounces of cocaine. Steele got out of the car and walked back to the parking lot. On his way he ran into defendant, who was leaving a tavern. Steele suggested that the defendant join him in taking care of some business. Steele stated that when they arrived at the parking lot, he introduced Stokilo to defendant and then handed Stokilo the cocaine. Stokilo tested the cocaine and gave Steele seven 100-dollar bills. Officer Stokilo went to the trunk to get the remainder of the money and, as she returned to the car, defendant stated he was ready to leave when the police officers appeared and arrested him.

## I

Defendant, a black man, first argues on appeal that this matter must be remanded for a hearing on whether the State improperly used its peremptory challenges to exclude blacks from the jury. During *voir dire* defense counsel twice argued that the State was utilizing its peremptory challenges in a racially discriminatory manner. After the State exercised its first series of peremptory challenges, defense counsel noted for the record that three of the four challenges were directed against black individuals. Further, after jury selection had been completed, defense counsel moved for a mistrial based on the fact that of the six peremptory challenges used by the State, three were directed against blacks. The trial judge stated that two members of the jury and one of the alternate jurors were black and denied the motion and did not require the State to give an explanation for its actions.

Prosecutors may not purposefully discriminate against a racial group in selecting a jury in a trial of a defendant belonging to that group. To establish a *prima facie* case of discrimination, a defendant must demonstrate that he is a member of a recognizable racial group and that the prosecution used peremptory challenges to remove members of his race from the jury panel. The defendant must show that the relevant facts and circumstances of the case raise an

inference of discrimination. After this *prima facie* case is made, the State has the burden of putting forward a neutral explanation for its challenges. The trial court must then evaluate the State's explanation for the use of its peremptory challenges to exclude blacks and determine whether the defendant has proved purposeful discrimination. See *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712; *People v. Evans* (1988), 125 Ill. 2d 50; *People v. Allen* (1987), 168 Ill. App. 3d 397, 521 N.E.2d 1172.

We agree with the defendant that the record in the case at bar could support a *prima facie* case of discrimination on the part of the State. The defendant is a black man, a member of a cognizable racial group and the prosecutor exercised three of his six peremptory challenges to exclude blacks from the jury. These factors suggest a *prima facie* case of discrimination requiring the State to provide a racially neutral explanation for the use of peremptory challenges to exclude blacks. Although, in its brief on appeal and at oral argument in this matter, the State has presented racially neutral explanations for the use of its three peremptory challenges against blacks, under the guidelines of *Batson,* the neutral explanations are only relevant in a remand situation to the trial court where the State will be required to rebut a *prima facie* case of discrimination established by the defendant. The initial determination of whether a defendant has established a *prima facie* case is left to the trial judge, who is in a superior position to determine whether the prosecutor's use of peremptory challenges was racially motivated. (*Evans,* 125 Ill. 2d 50.) The trial court is the proper forum in which claims of discriminatory use of peremptory challenges are to be resolved since the motives of the prosecutor are at issue. (*Batson,* 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712.) We are especially aware that the peremptory challenge could be used as a tool of discrimination in the case at bar, where the jury was required to balance the testimony of the white police officer, Nancy Stokilo, against two black witnesses, Eugene Harris and Kenneth Steele. The race of the defendant and the witnesses is a relevant factor to be considered in establishing a *prima facie* case of discrimination. Other relevant circumstances the trial court may consider include whether a pattern of strikes against black jurors is present; the prosecutor's questions and statements during *voir dire*; the disproportionate use of peremptory challenges against blacks; the level of black representation in the venire as compared to the jury; and whether the excluded blacks are a heterogeneous group sharing race as their only common characteristic. *Evans,* 125 Ill. 2d 50.

The State contends that the defendant failed to prove a

*prima facie* case of discrimination because two members of the jury, and one alternate, were black. However, this court has repeatedly held that the presence of blacks on the jury does not preclude the court from finding that the defendant has established a *prima facie* case of discrimination. (*People v. Seals* (1987), 153 Ill. App. 3d 417, 505 N.E.2d 1107; *People v. Johnson* (1986), 148 Ill. App. 3d 163, 498 N.E.2d 816; *People v. Kindelan* (1986), 150 Ill. App. 3d 818, 502 N.E.2d 422.) Accordingly, since the prosecutor was not required to explain on the record the reasons behind the use of his peremptory challenges, and the reasons for exclusion, other than race, are not apparent, this matter will be remanded to the trial court for a *Batson* hearing. Since we will sustain defendant's conviction and sentencing otherwise, as the following discussion reveals, the cause will be deemed affirmed if no systematic exclusion of jurors based upon race is found by the trial court after the *Batson* hearing and there is not further review sought here. Should the trial court find that there was impermissible exclusion of potential jurors at the conclusion of the *Batson* hearing, a mistrial shall be declared and defendant shall be granted a new trial.

## II

Defendant's remaining contention is that the prosecutor made certain comments during the cross-examination of the defendant and Kenneth Steele, and also in closing argument, which prejudiced him. Specifically, defendant contends that the prosecutor's statements that suggested that the defendant had coerced Kenneth Steele into providing testimony that would exculpate defendant denied him a fair trial. Although the defendant and Kenneth Steele were simultaneously arrested on June 28, 1984, only Steele was incarcerated at the time of trial. During a proceeding conducted the day before Steele testified, defendant expressed considerable concern about the willingness of Steele to testify on his behalf. Defendant twice requested the trial court's permission to visit Steele. The trial court responded to defendant's request and stated that he could visit with Steele in prison. During the cross-examination of Steele, Steele was questioned concerning a conversation he had with members of the State's Attorney's office three days before his testimony concerning his prior admissions that the defendant was the connection on the telephone and that the defendant provided Steele with the two ounces of cocaine to sell to Officer Stokilo. Further, both defendant and Steele were questioned on cross-examination concerning the conversation during defendant's visit with Steele in prison and whether there was a dispute as to

Steele's willingness to testify on defendant's behalf in light of his prior admissions to the State's Attorney's office.

■■ ■ Defendant contends that this line of questioning was improper since it infers that defendant coerced Steele into testifying on his behalf. In Illinois, the law is clear that a prosecutor has great latitude during cross-examination and may draw unfavorable inferences as long as his remarks are based upon the evidence. (*People v. Wirth* (1979), 77 Ill. App. 3d 253, 395 N.E.2d 1106.) Where inferences by the prosecutor are at issue, sufficient prejudice to require reversal is present only where the prosecutor utilized improper and unsupported inferences which were substantial, repeated and definitely prejudicial. (*People v. Hawkins* (1975), 61 Ill. 2d 23, 329 N.E.2d 221; *People v. Strubberg* (1978), 61 Ill. App. 3d 521, 378 N.E.2d 191.) A review of the record in the case at bar reveals references to a conflict between defendant and Steele from which reasonable inferences may be made by the prosecutor. On the day before Steele testified, defendant expressed his concern in the trial court about the willingness of Steele to testify. In addition, Steele was questioned concerning the testimony of State's Attorney Velvich in which Velvich stated that three days before Steele's testimony Steele had a conversation with three members of the State's Attorney's office concerning his admissions that the defendant was the connection on the telephone and that the defendant provided Steele with the two ounces of cocaine to sell to Officer Stokilo. Later, in his own testimony, Steele stated he did not remember this conversation with the State's Attorney. Based on these references, we do not find that the prosecutor's statements were unfounded, but, in fact, were supported by defendant's statements to the judge and Kenneth Steele's conflicting stories. Accordingly, we conclude that the cross-examination of Kenneth Steele was within the proper scope of exploration. See *People v. Hunter* (1984), 124 Ill. App. 3d 516, 464 N.E.2d 659.

■ Defendant also contends that the prosecutor's comments during closing argument compounded any error where he stated:

> "Doesn't it stun you to hear that on Monday Kenny Steele tells one story, he's talked to Wednesday night by (the defendant) and then he comes in with a totally different story today?"

At the outset, we note that the defendant failed to make a timely objection to these remarks in the trial court and the issue is thus waived on appeal. (*People v. Leverston* (1985), 132 Ill. App. 3d 16, 476 N.E.2d 1344.) In considering the merits of the argument, it is well settled that arguments and statements based upon the facts in evidence or upon reasonable inferences drawn therefrom are within the scope of

proper argument. (*People v. Terry* (1984), 99 Ill. 2d 508, 460 N.E.2d 746.) The record in the case at bar reveals that the defendant expressed concern to the court regarding Steele's willingness to testify in defendant's behalf. Further, defendant testified that only after he visited Steele in prison did Steele agree to testify. Based on these statements, in our judgment, there was sufficient evidence of coerced testimony and the inference by the prosecutor that a conflict existed between defendant and Steele was not unfounded but was appropriate in establishing the credibility of Steele's testimony. *Terry,* 99 Ill. 2d 508, 460 N.E.2d 746.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed in part and remanded with instructions.

Affirmed.

MANNING, P.J., and QUINLAN,* J., concur.

---

*Justice Quinlan participated in this opinion prior to his assignment to the sixth division.