THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LeCURTIS JOHNSON, a/k/a Lee Curtis Johnson, Defendant-Appellant.

First District (1st Division) No. 1—87—3866

Opinion filed June 4, 1990.

Michael J. Pelletier and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

800

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Sharon Jefferson, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Defendant, LeCurtis Johnson, a/k/a Lee Curtis Johnson, appeals from the trial court's determination on remand for a *Batson* hearing that defendant had failed to establish a *prima facie* case of race discrimination by the State in its use of peremptory challenges against black venirepersons. On appeal, defendant contends that: (1) he had sustained his burden of demonstrating a *prima facie* case of discrimination by the State, and (2) the trial court had prejudged defendant's claim of racial discrimination, thereby denying him his due process right to an impartial fact finder. For the following reasons, the judgment of the trial court is reversed and the cause remanded.

■ This is defendant's second appeal to this court. Defendant's first appeal, decided in *People v. Johnson* (1986), 148 Ill. App. 3d 163, 498 N.E.2d 816 (*Johnson I*), was from his conviction for armed robbery. In *Johnson I*, defendant contended that: (1) the trial court had erred in admitting into evidence shotgun shells found in his apartment; (2) the cumulative effect of improper prosecutorial comments during closing argument denied him his right to a fair trial; (3) the trial court abused its discretion in sentencing defendant to 10 years' imprisonment; (4) the trial court erred in denying defendant's motion for a new trial predicated on newly discovered evidence; and (5) the State's discriminatory use of peremptory challenges violated defendant's constitutional rights. During the pendency of defendant's first appeal, the United States Supreme Court decided *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, which held that a defendant may rely solely on evidence concerning the selection of the jury at his own trial to establish that a prosecutor had unconstitutionally exercised peremptory challenges against potential jurors solely on account of race. Pursuant to *Batson*, the defendant has the initial burden of establishing a *prima facie* case of racial discrimination in the prosecution's use of peremptory challenges. If the trial court determines that defendant has met that burden, the burden then shifts to the prosecution to present race-neutral reasons for striking venirepersons who are members of defendant's racial group. (476 U.S. at 96, 106 S. Ct. at 1723, 90 L. Ed. 2d at 87.) The issue of whether *Batson* was to be applied retroactively was still pending before the Supreme Court when this court filed its opinion in *Johnson I*.

In *Johnson I*, this court affirmed the judgment and sentence entered by the circuit court in all respects except as to the court's ruling on the issue of the State's discriminatory use of peremptory challenges. Regarding that issue, this court found that *Batson* applied retroactively to the case at bar[1] and remanded the case for a hearing to determine whether the State had purposefully discriminated against blacks in executing its peremptory challenges, instructing the court that if it found that the State had not purposefully discriminated, it was to confirm the judgment and sentence. However, if the court found that the State had purposefully discriminated, it was to order a new trial.

On remand for the *Batson* hearing, defense counsel stated for the record that defendant is black and that six out of seven peremptory challenges used by the State were against black venirepersons. Defense counsel also acknowledged that two of the jurors finally selected were black and that the prosecutor was black. The State withheld any argument until the trial court made its ruling as to whether defendant had established a *prima facie* case of discrimination. The trial court then stated:

> "If this were a case tried in one of our southern states like Florida, Georgia, Alabama, Tennessee, which have been noted for exhibiting prejudice against minority races, particularly blacks, then the numerical citation that [defense counsel] makes would appear to be more effective.
>
> But to say that the elimination of the exercise of preemptory [*sic*] challenges in six out of seven persons is an invidious exhibition of racial discrimination, I don't think applies under the setting we have in this geographical area.
>
> One of the tests of *Batson* is that the facts and circumstances allow the inference that the prosecutor purposefully excluded prospective jurors from the jury on account of their race.
>
> Now, certainly the record in this case must show, and the Appellate Court did recognize, that the prosecutor in this case, who led the prosecution, was Assistant State's Attorney Pamela Spooner, who herself is black. She is no longer with the State and is in private practice.
>
> And for me to conclude that she as a black person purpose-

---

[1]Subsequently, in *Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708, the Supreme Court held that *Batson* was to be applied retroactively to all cases pending on direct review when *Batson* was decided.

fully exercised preemptory [sic] challenges solely on a racial basis would not be consistent with what I know and have seen during the time that she practiced before this Court, nor do I think it is warranted by the evidence and the record made thus far in this case.

The Sixth Amendment, which was the original issue under which *Batson* granted *certiorari*, entitled the accused to a jury which can judge the case based upon the law and the facts.

Therefore, regardless of its racial composition if the jury is sworn that they will be impartial then the defendant has no cause to complain under the Sixth Amendment.

Inasmuch as this case has been sent back in order to dispose of it once and for all, I'm going to grant an evidentiary hearing in spite of the remarks that I have just made."

Based upon the trial court's remarks, defense counsel stated that he doubted whether defendant could get a fair hearing before the trial judge. The State responded that the case had been specifically remanded to the court that had heard the original jury selection. Without addressing defendant's request that the cause be transferred, the trial court found that defendant had failed to establish a *prima facie* case of race discrimination pursuant to *Batson*.

Subsequently, defense counsel filed a motion for reconsideration, requesting that: (1) the court reconsider its determination that defendant had failed to establish a *prima facie* case of racial discrimination and to grant him a hearing, and (2) the court recuse itself as the result of remarks made at the *Batson* hearing. In response, the State filed a memorandum of law, quoting answers made by the challenged black venirepersons during *voir dire* questioning. Following the quoted answers, the prosecutor for the *Batson* hearing, who was not the same prosecutor who had conducted the original *voir dire*, inserted her own comments as to why she thought the particular venireperson had been challenged. The trial court stated, "Now, I recognize that can be a conclusion by Mrs. Callum, who drew this memorandum, but nevertheless, I think it does provide a sufficient basis in law to excuse that juror." The trial court then made the following findings of fact: (1) the prosecutor was black; (2) there were valid reasons for the State's exercise of peremptory challenges; (3) there were two black jurors; and (4) nothing in the record supports a claim of purposeful discrimination in the jury selection process. Accordingly, the trial court concluded, as a matter of law, that defendant had failed to establish a *prima facie* case of discrimination and that he had been tried by an impartial jury and had received a fair

trial. The trial court then confirmed the judgment. Defendant's appeal followed.

■■ ■ Defendant initially argues that the trial court erred in finding that he had failed to establish a *prima facie* case of racial discrimination in the use of peremptory challenges. To establish a *prima facie* case, a defendant must show that the prosecutor exercised peremptory challenges to remove members of a cognizable racial group from the venire and that defendant is a member of that group. The defendant may then rely on the fact that peremptory challenges allow a prosecutor to discriminate in conjunction with other relevant circumstances to raise an inference that the prosecutor had used peremptory challenges to exclude venirepersons on the basis of their race. (*People v. McDonald* (1988), 125 Ill. 2d 182, 530 N.E.2d 1351.) The relevant circumstances which a trial court may consider include: a pattern of challenges used against black venirepersons; the prosecutor's questions and statements during *voir dire*; the disproportionate use of peremptory challenges against blacks; whether the excluded blacks share only race as a common characteristic; the level of black representation in the venire as compared to the jury; the race of the defendant and the victim; and the race of the witnesses. (*People v. Mahaffey* (1989), 128 Ill. 2d 388, 539 N.E.2d 1172.) In considering these circumstances, the trial court must be mindful that the exclusion of just one minority venireperson for racial reasons is unconstitutional and provides grounds for reversal. *People v. Harris* (1989), 129 Ill. 2d 123, 544 N.E.2d 357.

In *Harris*, at defendant's *Batson* hearing, it was established that defendant was black, 2 of the 12 jurors had been black and that 15 of the State's 20 peremptory challenges had been used to exclude blacks. Based on these findings, the trial court held that a *prima facie* case of discrimination had been established. In affirming the trial court, the supreme court found that there had been a "pattern of strikes" against black venirepersons and that the group against whom these strikes had been made shared race as their only common characteristic. Specifically, the court noted that the 15 black venirepersons who had been stricken ranged in age from 19 to 59; 12 were men; 3 were women; the occupations were: steelworker, hostess, therapist, housekeeper, fork lift operator, nurse, secretary and personnel manager. The *Harris* court concluded that the burden had shifted to the State to provide race-neutral explanations for excluding the black venirepersons. Moreover, the explanations must articulate which facts were "in fact" the basis for the allegedly discriminatory act. *Harris*, 129 Ill. 2d at 184.

Similarly in *People v. McDonald* (1988), 125 Ill. 2d 182, 530 N.E.2d 1351, the supreme court affirmed the trial court's determination that defendant had established a *prima facie* case of discrimination on the grounds that the prosecutor's use of 16 of his 18 peremptory challenges to exclude black venirepersons evidenced a pattern of strikes against blacks, whose only common characteristic was race. See also *People v. Harris* (1989), 182 Ill. App. 3d 114, 537 N.E.2d 977 (*prima facie* case established when three of six challenges were used against black venirepersons); *People v. Colley* (1988), 173 Ill. App. 3d 798, 528 N.E.2d 223 (*prima facie* case established when four of eight challenges were used against black venirepersons); *People v. Sims* (1987), 154 Ill. App. 3d 528, 507 N.E.2d 178 (*prima facie* case established when six of eight challenges were used against black venirepersons); *People v. Cannon* (1987), 153 Ill. App. 3d 245, 505 N.E.2d 1272 (*prima facie* case established when five of six challenges were used against black venirepersons even though the victim was black and one black venireperson had been selected as an alternate juror).

In the present case, the record indicates that: defendant was black; the prosecutor was black; the prosecutor had exercised six of her seven peremptory challenges against black venirepersons; and two blacks served on the jury. Moreover, the only common characteristic shared by the challenged black venirepersons was their race. Although several of the challenged black venirepersons had been victims of crimes, this characteristic was equally true with respect to the non-black venirepersons who were not challenged. Further, all of the challenged black venirepersons who had been victims of crimes stated during *voir dire* that the fact that they had been victims of a crime would not influence their judgment as a juror.

 The State argues that the fact two of the jurors were black and the prosecutor herself was black precludes a determination of *prima facie* discrimination. Contrary to the State's assertion, *Batson* does not require a complete exclusion of a racial group to prove discrimination. (*People v. Johnson* (1987), 159 Ill. App. 3d 991, 513 N.E.2d 852.) In the present case, a distinct "pattern of strikes" was established against members of defendant's racial group. As previously stated, use of a peremptory challenge for racial reasons against only one venireperson is unconstitutional. (*People v. Harris* (1989), 129 Ill. 2d 123, 544 N.E.2d 357.) Moreover, we are not persuaded that merely because the prosecutor was black, she would not have discriminated against her own racial group. We do not deny that the race of the prosecutor is a relevant consideration for the trial court.

However, in light of all of the other factors present in this case, it is not dispositive. Accordingly, we conclude that: (1) the trial court's finding that defendant had failed to establish a *prima facie* case of discrimination was against the manifest weight of the evidence, and (2) the burden to provide race-neutral explanations for the use of peremptory challenges against the black venirepersons shifted to the State.

Our determination that the burden shifted to the State necessitates our review of the memorandum filed by the State with its response to defendant's motion to reconsider. Pivotal facts in our analysis are that the memorandum was not prepared by the prosecutor who had conducted the original *voir dire*, and that the original prosecutor was not even consulted in the preparation of the memorandum. As a result, the memorandum contained quoted answers made by the challenged black venirepersons during *voir dire* questioning, which were annotated by the current prosecutor with her comments as to why she thought those particular comments had resulted in the State's use of peremptory challenges. Although the trial court recognized that the annotations might be considered "conclusions" by the current prosecutor, the court nonetheless adopted the memorandum in its entirety as part of its opinion.

■ In our view, the memorandum was improperly considered for two reasons. First, pursuant to *Batson*, the burden to present race-neutral explanations for peremptory challenges does not shift to the State unless the trial court makes a finding that defendant has established a *prima facie* case of racial discrimination. In the present case, the trial court found that defendant had not established a *prima facie* case. When defendant moved for reconsideration, his motion did not seek reconsideration of any race-neutral explanations because none had been given at the original hearing. Instead, the motion sought reconsideration of the trial court's finding that he had failed to establish a *prima facie* case of discrimination. If the trial court had vacated its original judgment and found that defendant had established a *prima facie* case of racial discrimination, then a hearing would have had to have been set for the State to present race-neutral explanations and for the defendant to challenge those explanations. The State's explanations are only relevant when the State is required to rebut a *prima facie* case of discrimination. (See *People v. Harris* (1989), 182 Ill. App. 3d 114, 537 N.E.2d 977.) There was no such determination made in the present case. To allow a hearing under the present circumstances not only improperly shifts the burden of proof, but does so without any notice to defendant for

preparation of his challenge to the State's explanations.

Second, even if the burden had been properly shifted to the State, the State's race-neutral explanation in the form of a memorandum predicated solely on speculation is insufficient to meet the *Batson* requirement. For this court to allow after-the-fact, speculative explanations for the use of peremptory challenges against members of minority racial groups would undermine the whole purpose for a *Batson* hearing. As stated by the supreme court in *People v. Harris* (1989), 129 Ill. 2d 123, 185, 544 N.E.2d 357, quoting *Uviedo v. Steves Sash & Door Co.* (5th Cir. 1984), 738 F.2d 1425, 1430, "It is beyond the province of a trial or a reviewing court to determine—after the fact—that certain facts in the record might have served as the basis for [a discriminatory act]." They must have "in fact" served as the basis for the act. *Harris*, 129 Ill. 2d at 184.

Defendant next argues that this court should remand his case for a *Batson* hearing before a different judge because the trial judge in this case had prejudged his case, thus denying him his due process right to an impartial factfinder. In response, the State denies that the trial judge prejudged the defendant's case and contends that the trial judge was impartial.

■■ ■ A defendant's right to an unbiased, open-minded trier of fact is rooted in the constitutional guaranty of due process of law. (*People v. McDaniels* (1986), 144 Ill. App. 3d 459, 494 N.E.2d 1275.) " 'Pre-judgment is the antithesis of a fair trial' " because a defendant is entitled to a fair and impartial trial before a court which does not render judgment until after trial. (*McDaniels*, 144 Ill. App. 3d at 462, 494 N.E.2d at 1278, quoting *People v. Diaz* (1971), 1 Ill. App. 3d 988, 993, 275 N.E.2d 210, 212.) In order to show bias or prejudice on the part of the trial court toward one of the parties, however, the record must show that there was active personal animosity, hostility, ill will or distrust toward the defendant and, absent such a showing, a court will not conclude that there was actual prejudice which prevented or interfered with a fair hearing. *People v. Vance* (1979), 76 Ill. 2d 171, 390 N.E.2d 867.

■■■ Applying the foregoing standards to the record in this case, there is no evidence that the trial court prejudged the defendant's case. The record does not reveal any personal animosity, hostility, ill will or distrust on the part of the trial court toward the defendant. Further, the trial court's comment that he did not believe that there was discrimination in this case was not made until after the defendant had presented his evidence.

The cases relied upon by defendant in support of his claim that

the trial court had prejudged his case are distinguishable from the present facts. In those cases, the trial court clearly exhibited a bias against the defendant. (See, *e.g.*, *People v. Gurga* (1988), 176 Ill. App. 3d 82, 83-84, 530 N.E.2d 1059 (on remand for resentencing, the trial court imposed the same sentence that it had originally imposed, commenting that it was "in complete and total disagreement" with the appellate court's decision to remand and that "we have a 19th Century system of appeals"); *People v. McDaniels* (1986), 144 Ill. App. 3d 459, 462, 494 N.E. 1275 (court stated that the defendant's claim of self-defense was "pretty ridiculous" before the first witness for the State had completed his testimony); *People v. MacRae* (1979), 78 Ill. App. 3d 266, 268, 397 N.E.2d 509 (upon remand for resentencing to consider whether the defendant was entitled to probation, the court sentenced the defendant to the original sentence of four to six years, stating that it disagreed with the appellate court and that the appellate court's opinion "stinks"); *People v. Ojeda* (1969), 110 Ill. App. 2d 480, 249 N.E.2d 670 (trial court's comments indicated that it believed the testimony of a police officer and would disbelieve the testimony of a defense witness).) Since there was no clear bias or prejudice in this case, we find that defendant was not denied his due process right to an impartial factfinder.

Based upon the aforementioned, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a continuation of the *Batson* hearing, at which the State is to provide race-neutral explanations for the use of peremptory challenges against black venirepersons. In the event the circuit court finds that the State did not purposefully discriminate, the court is directed to confirm the judgment and sentence. If the court finds that the State did purposefully discriminate, the court is directed to order a new trial.

Reversed and remanded with instructions.

BUCKLEY, P.J., and O'CONNOR, J., concur.