**Henry Wayne VANN, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 05–89–00250–CR.**

Court of Appeals of Texas, Dallas.

April 19, 1990.

Rehearing Denied May 25, 1990.

Gary A. Udashen, Dallas, for appellant.

Sharon Batjer, Dallas, for appellee.

Before McCLUNG, KINKEADE and OVARD, JJ.

## OPINION

KINKEADE, Justice.

Henry Wayne Vann, an African–American, appeals his jury conviction for aggravated robbery. The trial court assessed punishment, enhanced by a prior conviction, at 80 years' confinement in the Texas Department of Corrections. In six points of error, Vann contends that the trial court erred by (1) overruling his objection to the prosecutor's use of the State's peremptory strikes to exclude African–Americans from the jury and (2) denying a mistrial because the prosecutor injected new and harmful facts into the case in his phrasing of a question. Because we find that the prosecutor exercised the State's peremptory strikes on the basis of race, we reverse the trial court's judgment and remand this cause to the trial court for further proceedings.

## FACTS

The record shows that on May 1, 1988, appellant Henry Wayne Vann forced Gerald Wesley, the complainant, and Wesley's fiancee, Leatrice Cole, to give him money after pointing a gun at them. Wesley lunged at Vann, who shot Wesley seven times. Wesley and Cole testified as the State's only eyewitnesses.

The record further shows that the original venire consisted of forty-five members, at least five of whom were alternate jurors. Eleven venire members were African–Americans, including two alternate jurors. Vann exercised one peremptory strike to exclude one African–American venire member. The prosecutor used six of the State's ten peremptory strikes to exclude six of nine African–American venire members and used the other four strikes to exclude four of twenty-three potential white jurors. Two African–Americans served on the jury panel. After the prosecutor announced his peremptory strikes, Vann contended that the prosecutor used racial considerations in excluding the six African–American venire members. The trial court required the prosecutor to state his reasons for striking those venire members and found that the prosecutor did not exclude them "solely" on the basis of their race.

## THE PRIMA FACIE SHOWING OF PURPOSEFUL DISCRIMINATION

■ The Equal Protection Clause forbids a prosecutor from challenging potential jurors on the basis of their race or on the assumption that jurors who belong to a particular racial group cannot impartially consider the State's case against a member of their own race. In order to establish a

*prima facie* case of purposeful discrimination in selection of the jury panel, a defendant must show that (1) he belongs to a cognizable racial group, (2) the prosecutor exercised peremptory challenges to remove members of the defendant's race, and (3) the facts and circumstances raise an inference that the prosecutor used the practice to exclude venire members because of their race. *Batson v. Kentucky*, 476 U.S. 79, 96, 106 S.Ct. 1712, 1722, 90 L.Ed.2d 69 (1986). The defendant can rely on the fact that peremptory challenges constitute a jury selection practice that permits those to discriminate who have a mind to discriminate. Once a defendant makes a *prima facie* showing of purposeful discrimination in selection of the jury panel, the burden shifts to the State to come forward with a racially neutral explanation for challenging particular jurors. *Batson*, 476 U.S. at 96–97, 106 S.Ct. at 1722–23.

The parties do not dispute that Vann belongs to a cognizable racial group and that the prosecutor exercised peremptory challenges to remove members of Vann's race from the venire. However, in order to establish a *prima facie* case of purposeful discrimination, Vann must also prove the third factor set forth in *Batson*, that the facts and circumstances raise an inference that the prosecutor excluded the venire members because of their race. The trial court implicitly found that Vann made a *prima facie* showing of purposeful discrimination because the trial judge required the prosecutor to state the reasons for excluding the African–American venire members. We find that the record supports the trial court's implicit finding because the prosecutor used six of the State's ten peremptory strikes to exclude six of nine potential African–American jurors, raising an inference that the prosecutor excluded them because of their race. We now turn to a review of the trial court's determination that the State did not exercise its peremptory strikes for the purpose of excluding venire members of Vann's race. *See Tompkins v. State*, 774 S.W.2d 195, 201 (Tex.Crim.App.1987).

## THE STATE'S BURDEN

After a defendant establishes a *prima facie* case of purposeful discrimination, a presumption exists that the State struck the African–American venire members on the basis of race. The State then has the burden to articulate a clear, specific, legitimate, and racially neutral reason for exercising the challenge. However, this showing need not rise to the level of a challenge for cause. *Keeton v. State*, 749 S.W.2d 861, 867–68 (Tex.Crim.App.1988) (*Keeton II*). Evidence that the State can use to overcome the presumption of discrimination includes a showing that (1) the State challenged jurors other than the African–American jurors with the same or similar characteristics as the African–American jurors, and (2) the State did not use a "pattern" of strikes to challenge African–American jurors. *Keeton II*, 749 S.W.2d at 868. The State cannot meet this burden on mere general assertions that its officials did not discriminate or that they properly performed their official duties. Rather, the State must demonstrate that it used permissible racially neutral selection criteria and procedures to select the jurors. *Keeton II*, 749 S.W.2d at 868.

During *voir dire* examination of the entire panel, the prosecutor stated:

[THE PROSECUTOR]: ... I had a case before where one black man shot another black man, and I had three black businessmen on the jury and their response when they got back in the jury room was: Well, the Defendant said he didn't want anybody to get into his truck, and down where we live in the black part of Dallas, you don't keep somebody from getting in his truck, so I think he had every right to shoot this man point blank in the chest with a high-powered rifle, to cause this man to undergo five hours of open-heart surgery, that's all right, because he was trying to keep him out of his truck. Now, there wasn't any fact of this man getting him or this man had a weapon or anything to keep him out of his truck. Those three black businessmen convinced nine white people that that's the way it should be, that you ought to let a black man get in his own

truck. So it can work any type of way, any different way. You don't say: Well, because I'm from that place there's a lot of killing and we ought to let it go on. Is there anybody here, once again, that thinks they may apply a given standard? Because as you see right here, we've got a black defendant. . . .

After the prosecutor exercised the State's peremptory strikes and Vann stated that the prosecutor struck African–American venire members based solely on their race, the trial court requested that the State explain those strikes. The following exchange occurred:

> THE COURT: [Prosecutor], what was your reason for striking juror number 15, Dianne Lewis?
>
> [THE PROSECUTOR]: Juror number 15, Judge, and also juror number 36 and 37 were three blacks, that 36 and 37 were two ·elderly blacks, and juror number 15 was a 39–year–old black woman who worked as a loan specialist. All three of those gave the appearance to me as being a conservative type. The reason I struck them was I'm afraid that of the evidence—or I'm afraid that the evidence tends to show that this is a dope deal gone bad in which a shooting occurred. I'm trying to get away from conservative type people and white people for the same situation.
>
> THE COURT: What other strikes did you make for that reason?
>
> [THE PROSECUTOR]: For white people, Judge?
>
> THE COURT: Yes.
>
> [THE PROSECUTOR]: Ms. Epperson, number 27. Can I see my strike list, Judge? Number 33, Mr. Gamboa, although he would—I anticipate is hispanic, is not a black person, I struck for that reason. Also juror number 34, Mr. Johnson, the paralegal, I struck for that reason; and number 26, who was also a black male, Mr. Taylor, I struck for that reason.
>
> . . . .
>
> [DEFENSE COUNSEL]: We would like the record to reflect that Mr. Gamboa,

who [the prosecutor] is saying is a conservative type person—

> THE COURT: What juror number?
>
> [DEFENSE COUNSEL]: Number 33. When I asked him, he explained that he's an assistant manager at a grocery store and is quite young, 28 years old. Whereas say for instance juror number 2, who was dressed in a very conservative blue suit and who works for a commercial real estate firm, white male, 35, wife works as a registered nurse, very conservative appearance, the State did not exercise their peremptory strikes on a very conservative person. That there were other conservatively dressed professionals on the panel which the State did not strike, but that they were white and conservative. That's all we have, Judge.

The prosecutor did not challenge the defense counsel's statement but stated for the record that he did not exercise the State's peremptory strikes on three African–Americans, two of whom served on the jury panel, because he thought that they might show tolerance toward the complainant despite his involvement in a drug deal. The trial court then found that "the State's peremptory challenges were not based solely on race."

## REVIEW OF THE TRIAL COURT'S FINDING

### 1. *Standard of Review*

■ An appellate court must consider the evidence in the light most favorable to the trial judge's rulings and determine whether sufficient evidence supports those rulings. If the record supports the trial court's findings, we will not disturb them on appeal. *Keeton II*, 749 S.W.2d at 868. We must also keep in mind that the defendant has the burden to persuade the trial judge by a preponderance of the evidence that the allegations of purposeful discrimination are true in fact. *Tompkins*, 774 S.W.2d at 202.

■ Trial judges experienced in supervising *voir dire* examinations should be able to determine if the circumstances concerning the prosecutor's use of peremptory

**904**

challenges create a *prima facie* case of discrimination against African–American jurors. *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723. By largely judging the credibility of the prosecutor, the content of the explanation and all the other surrounding facts and circumstances, the trial judge must make a finding of fact concerning purposeful discrimination to which a reviewing court should give great deference. *Batson,* 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21; *Keeton v. State,* 724 S.W.2d 58, 65 (Tex. Crim.App.1987) (*Keeton I*). The trial judge must examine each of the prosecutor's reasons for striking a potential black juror within the circumstances of the particular case to determine whether the State gave a "neutral explanation" for a strike as a pretext for a racially motivated peremptory challenge. *Keeton II,* 749 S.W.2d at 868. In making this determination, the trial judge must ascertain whether the prosecutor articulated a "clear and reasonably specific" explanation of "legitimate reasons" for striking the African–American venire member. *Batson,* 476 U.S. at 97–98 n. 20, 106 S.Ct. at 1724 n. 20. The trial judge cannot merely accept the specific reasons given by the prosecutor at face value, but must consider whether the prosecutor contrived the racially neutral explanations to avoid admitting acts of group discrimination. The trial judge must make such an evaluation because an attorney, although not intentionally discriminating, may try to find reasons other than race to challenge an African–American juror when race may be his primary factor. *Keeton II,* 749 S.W.2d at 868.

■ Conversely, once the prosecutor gives a racially neutral explanation that can legally support a judgment in the State's favor, he presents a fact issue that the trial judge can resolve only by assessing the weight and credibility of the evidence. *Tompkins,* 774 S.W.2d at 202. The defendant bears the ultimate burden of proving that the prosecutor exercised the State's peremptory strikes in a discriminatory fashion. *See Tompkins,* 774 S.W.2d at 202; *Branch v. State,* 774 S.W.2d 781, 782–83 (Tex.App.—El Paso 1989, no pet.). We must determine whether sufficient evidence exists to support the trial judge's finding that the prosecutor did not discriminate.

## 2. Facts Shown at the Batson *Hearing*

■ The record shows that the prosecutor used six of the State's ten peremptory challenges to strike six of the nine African–American venire members. The prosecutor used the State's other peremptory strikes to exclude four of twenty-three white venire members. The prosecutor's strikes constituted a "pattern" to exclude African–American venire members from the jury panel. We must now determine whether the prosecutor gave specific, racially neutral reasons for striking the African–American jurors, and, if so, whether the prosecutor contrived the explanations to avoid admitting acts of group discrimination. Evidence of disparate treatment of a juror, such as when the State does not strike persons with the same or similar characteristics as the challenged juror, weighs heavily against the legitimacy of a racially neutral explanation given by the State, as does a prosecutor's lack of meaningful questions to a challenged juror. A prosecutor's explanation based on a group bias where the prosecutor does not show that the group trait applies to the challenged juror specifically may be evidence that the prosecutor's stated reason for striking the juror is a sham or pretext. *Keeton II,* 749 S.W.2d at 868.

The trial court required the prosecutor to explain why he struck the African–American venire members, and he stated that he struck jurors Lewis, Taylor, Teel, and Thomas because they appeared to be conservative and he thought that conservative jurors would not be tolerant of a complainant and eyewitness involved in a drug deal. The prosecutor stated that he thought juror Lewis was conservative based on her employment in a bank, that juror Taylor had a conservative appearance, and that he thought jurors Teel and Thomas were conservative because they were elderly. The prosecutor gave additional reasons for striking jurors Teel, Thomas, and the fifth and sixth African–American venire mem-

bers. We do not address those additional reasons because we find that the prosecutor contrived his explanation that he struck jurors Lewis, Taylor, Teel, and Thomas because they were conservative, and further find that he struck those jurors at least in part on the basis of their race.

During *voir dire* examination, the prosecutor stated that he had previously prosecuted a case in which three African–American businessmen on the jury convinced nine white jurors that an African–American could use deadly force against an unarmed man because "in the black part of Dallas, you don't keep somebody from getting in his truck." The prosecutor noted that Vann was an African–American defendant, and the record indicates that the complainant and the only other eye witness were both African–Americans. The State contends that the prosecutor thought that the evidence would show that the shooting resulted from a drug deal. The prosecutor's statements implied he did not think that conservative African–Americans could impartially consider the State's case against Vann.

The record shows that, in response to the prosecutor's assertion that he struck jurors Lewis, Taylor, Teel, and Thomas because they were conservative, defense counsel stated that the prosecutor had not struck several conservatively dressed white venire members, such as juror number two who worked for a commercial real estate firm and wore a conservative blue suit. The prosecutor did not dispute the defense counsel's statements. The record also shows that the prosecutor stated that jurors Teel and Thomas appeared to be conservative because of their ages, sixty-two and sixty-three years, respectively. The prosecutor did not strike two white jurors aged fifty-four and fifty-nine, both of whom served on the jury panel. The record further shows that the prosecutor did not question Lewis, Taylor, Teel, or Thomas about drugs or their attitudes toward drug usage.

Vann rebutted the prosecutor's facially neutral explanation when he established that the State used a pattern of peremptory strikes to exclude African–American venire members, and that the prosecutor stated that he struck four African–American venire members because they were conservative while leaving on the jury panel white venire members with the same or similar characteristics. Vann further rebutted the prosecutor's explanation when he established that the prosecutor's questions during *voir dire* examination of jurors Lewis, Taylor, Teel, and Thomas bore no relation to the prosecutor's stated concern that conservative jurors might be intolerant of a complainant or witness involved in a drug deal. After Vann rebutted the State's facially neutral reasons for excluding the African–American venire members, the prosecutor failed to make any showing that he would have exercised the State's peremptory strikes to exclude the African–American venire members regardless of their race. The prosecutor's previous statements casting doubt on an African–American's ability to impartially consider a case against another African–American further support Vann's allegations of discrimination. The trial court found that the prosecutor did not exclude the African–American jurors based "solely" on race. On appeal, the State contends that the record supports the trial court's finding that the prosecutor did not base his strikes "solely on race."

When a prosecutor gives more than one reason for exercising a peremptory strike, the trial court must review every reason for the strike. Racial discrimination cannot play any role in the State's exercise of the strike. *Whitsey v. State*, No. 1121–87, slip op. at 8 (Tex.Crim.App. May 10, 1989) (not yet reported). The trial court used an incorrect standard when it found that the State did not exercise its peremptory strikes based "solely" on race. The record does not support a trial court finding that the State did not strike any African–American jurors on the basis of their race.

Vann proved by a preponderance of the evidence that the prosecutor contrived a facially neutral explanation for striking jurors Lewis, Taylor, Teel, and

Thomas and that the prosecutor struck those jurors, at least in part, because of their race. *See Keeton II,* 749 S.W.2d at 868. The exclusion of even one member of Vann's race from the jury panel for a racial reason invalidates the entire jury selection process and requires reversal. *See Batson,* 476 U.S. at 100, 106 S.Ct. at 1725; *Keeton II,* 749 S.W.2d at 871 n. 1 (Teague, J., concurring). We reverse the trial court's judgment and remand this cause to the trial court for further proceedings.