**Robert Earl LINSCOMB, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 203–91.**

Court of Criminal Appeals of Texas, En Banc.

March 11, 1992.

Rehearing Denied May 6, 1992.

Bob Wicoff, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Alan Curry, Denise Dryer, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

BENAVIDES, Judge.

Appellant was convicted of delivering cocaine in violation of the Texas Controlled Substances Act.[1] His punishment, enhanced by two prior felony convictions, was assessed at imprisonment for 45 years.[2] On appeal, he alleged that four African-Americans were purposefully excluded from the jury selected to try him in violation of the Fourteenth Amendment, as authoritatively construed in *Batson v. Kentucky*.[3] The Court of Appeals, however, affirmed his conviction, holding that no error arose from the exclusion of these veniremembers because Appellant failed to establish at trial a *prima facie* case of deliberate racial discrimination by the State.[4]

■ *Batson* significantly changed Equal Protection jurisprudence. It renounced the view that racial discrimination can never be proven on the basis of jury selection practices occurring in a single trial and that prosecuting attorneys are never required to explain the reasons for their exercise of peremptory challenges.[5] Today, explanation of those reasons is required whenever the defendant in a criminal proceeding can establish a *prima facie* case that the prosecutor in fact made racially motivated strikes against eligible veniremembers. To make such a case, the defendant must

show that "relevant circumstances raise an inference that the prosecutor used ... [the peremptory challenge] practice to exclude ... veniremen from the petit jury on account of their race."[6]

In the instant cause, it was made known to the trial judge that the venire from which Appellant's jury was selected included six African-Americans, that two of these actually served as jurors in the case, and that all of the others were excluded by peremptory challenge of the prosecuting attorney. Assuming, as a best case scenario for the State, that all of its ten peremptory challenges were made against a group consisting of the first 32 eligible veniremembers not excluded for cause, it is apparent that the prosecuting attorney in fact used 40 percent of her available strikes to exclude members of an identifiable race which comprised only 19 percent of the group against whom peremptory challenges could effectively be exercised.

When Appellant opposed impanelling a jury selected in this way because the State, in his view, had deliberately discriminated against black veniremembers on account of their race, the prosecuting attorney refused to reveal her reasons for striking the members in question, claiming that Appellant had not made a *prima facie* case of racial discrimination. Ultimately, the trial judge agreed and overruled Appellant's objection.

1. *See* V.T.C.A., Health & Safety Code, §§ 481.102(3)(D), 481.112(a).

2. *See* V.T.C.A., Health & Safety Code, § 481.112(b); V.T.C.A., Penal Code, § 12.42(d).

3. 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

4. *Linscomb v. State*, No. 14–90–00025–CR, 1991 WL 1144 (Tex.App.—Houston [14th], delivered January 10, 1991) (opinion unpublished).

5. *Compare Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).

6. *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723. The Court of Appeals described this standard as a three-part test, holding that, "[t]o establish a prima facie case, a defendant must show that he is a member of a cognizable racial group, that

the prosecutor exercised peremptory challenges to remove from the venire members of the defendant's race, *and* that these facts and other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude the venirepersons from the jury on account of their race." Slip Op. at 16. But, except that the State must of course be shown to have excluded members of an identifiable race, the first two requirements of this test, arguably imposed by *Batson*, are no longer the law. At least since *Powers v. Ohio*, 499 U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), a defendant need not be of any identifiable race himself nor need the wrongfully excluded veniremembers be of the same race as he in order that his *Batson* claim be cognizable. Indeed, even before *Powers* it was reasonably clear that the first two matters thought to be parts of the test by the Court of Appeals were actually just standing requirements.

The Court of Appeals upheld this decision, concluding that Appellant had not developed sufficient "facts and other relevant circumstances [to] raise an inference that the prosecutor used the peremptory challenges to exclude the venirepersons from the jury on account of their race."[7] Because Appellant adduced no evidence specifically in support of his objection nor did he request the trial judge to notice specific circumstances of the jury selection process, the necessary implication of this holding is that a statistical analysis of peremptory strikes alone is never enough for a *prima facie* showing of racial discrimination. We granted discretionary review because of disagreement among the lower courts on this threshold question of law.[8]

■ We start from the proposition that the United States Constitution is offended by so much as a single strike exercised on the basis of race. Thus, it is not necessary that an aggrieved party demonstrate multiple instances of racial prejudice in jury selection to prove a constitutional violation. But, the bare fact of strikes exercised against persons of a certain race does not necessarily reveal the work of a racially prejudiced mind. What may be revealing, however, is a repetition of such strikes in suspiciously large numbers—numbers larger than one would expect if race had nothing to do with it. Establishing a *prima facie* case in this way, based only on the relative number of peremptory challenges against members of an identifiable race, is not impossible. Judges at all levels must frankly assess the legitimate inferences to be drawn from statistical evidence made available to them before making up their minds. Sometimes such evidence will be telling.[9]

■ In the instant cause, the prosecutor exercised peremptory challenges against black veniremembers at more than twice the rate one would expect from a random selection. Because she was not made to reveal her actual motives, we have no reason to suppose that this disproportionately large number was merely coincidental. Rather, from the limited information available, it seems more likely that her jury selection strategy was actually based on a racially sensitive assessment of the panel. In short, given the suspiciously high rate at which she struck black veniremembers, some explanation of her actual motives seems clearly to be called for. And, as a practical matter, that is all *"prima facie case"* really means.

■ "[T]he minimum quantum of evidence necessary to support a rational inference[,]" as we have elsewhere described a *prima facie* case, is not three pounds or half a bushel or a baker's dozen.[10] It is any relevant evidence with more than a modicum of probative value. The tendency of courts to speak metaphorically about evidence in terms of its "weight" is, therefore, only a rhetorical device. It should not obscure the fact that "weight" in this sense is really just the power to incline toward a belief. Often, it is difficult to describe such an inclination precisely, let alone quantify it measurably. But, in the present context, we believe it will not be widely disputed as an empirical matter that exhausting forty percent of one's challenges on prospective jurors belonging to a racial group which comprises only nineteen percent of a challengeable panel does indeed indicate a predilection to strike veniremembers on account of their membership

7. Slip Op. at 16.

8. Tex.R.App.Proc. 200(c)(1). *Compare Vann v. State,* 788 S.W.2d 899, 902 (Tex.App.—Dallas 1990).

9. *See Salazar v. State,* 795 S.W.2d 187 (Tex. Crim.App.1990) (Exercising one strike against the only hispanic veniremember constitutes a *prima facie* case); *Whitsey v. State,* 796 S.W.2d 707 (Tex.Crim.App.1989) (Striking all 6 eligible black veniremembers constitutes a *prima facie* case); *Chambers v. State,* 784 S.W.2d 29 (Tex.

Crim.App.1989) (Peremptory exclusion of all 3 eligible black veniremembers makes a *prima facie* case); *Dewberry v. State,* 776 S.W.2d 589 (Tex.Crim.App.1989) (Striking 5 out of 6 black veniremembers constitutes a *prima facie* case); *Miller–El v. State,* 748 S.W.2d 459 (Tex.Crim.App.1988) (Exclusion of all but one black veniremember by using 10 out of 14 strikes against blacks makes a *prima facie* case).

10. *Tompkins v. State,* 774 S.W.2d 195, 201 (Tex. Crim.App.1987).

in that group. And this indication plainly seems strong enough, at least in this case, to call for an explanation from anyone who has an interest in some racially neutral alternative hypothesis. Accordingly, we are satisfied that the peremptory challenges exercised by the State in this cause were made under circumstances which fairly raise an inference of racial motivation.

■ Our conclusion is not affected by the fact that two African–American persons actually served as jurors in this cause. The Court of Appeals thought this circumstance significant, mainly because the presence of these persons produced a jury in which African–Americans were as well represented as they were on the panel of prospective jurors. We think such reasoning more characteristic of a Sixth Amendment than of an Equal Protection dispute.[11] Under *Batson*, courts are not to be occupied principally with the extent to which members of any identifiable race were actually represented on the jury, but with whether the State was racially motivated in the exercise of its peremptory challenges against even one veniremember of discernible race.

■ We do not, of course, consider it irrelevant to the issue that some members of the race in question were not struck by the State, or that some actually served. Clearly this circumstance does militate against an ultimate finding of racially discriminatory practices.[12] But it does not substantially affect the significance of contrary inferences which have been fairly raised by other circumstances apparent from the jury selection process. A *prima facie* case is what raises the issue, not what eventually disposes of it. In determining, therefore, whether a *prima facie* case is reflected on the record, courts are not to resolve the question of deliberate racial discrimination on its merits by assessing the probative weight of competing inferences or conflicting evidence. They are simply to decide whether the issue has been raised. "The burden of establishing a prima facie case of disparate treatment is not onerous."[13]

■ Because an unexpectedly high rate of challenges against a particular group is, as an empirical matter, some evidence of an intent to exclude persons on account of membership in that group, the Court of Appeals was in error to hold that the proportion of peremptory strikes against members of a cognizable race can never alone give rise to an inference of purposeful discrimination.[14] Clearly, in the instant cause,

**11.** *See Holland v. Illinois,* 493 U.S. 474, 482–484, 110 S.Ct. 803, 808–09, 107 L.Ed.2d 905 (1990); *Seubert v. State,* 787 S.W.2d 68 (Tex.Crim.App. 1990).

**12.** *See, e.g., United States v. Joe,* 928 F.2d 99, 103 (4th Cir.1991); *State v. Gonzales,* 111 N.M. 590, 808 P.2d 40 (App.1991).

**13.** *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).

**14.** Cases from the federal circuits and our sister states are often conflicting. No common approach to the problem of *prima facie* proof has clearly begun to emerge. Many cases eschew reliance on the number of peremptory strikes alone. *E.g., United States v. Dawn,* 897 F.2d 1444 (8th Cir.1990); *People v. Rooseveltause,* 209 Ill.App.3d 772, 154 Ill.Dec. 403, 568 N.E.2d 403 (1991). Others seem willing to find an issue of racial discrimination even when such strikes have been exercised against members of an identifiable group in apparently random fashion. *E.g., United States v. Chinchilla,* 874 F.2d

695 (9th Cir.1989); *Reynolds v. State,* 576 So.2d 1300 (Fla.1991); *Commonwealth v. Harris,* 409 Mass. 461, 567 N.E.2d 899 (1991). Consider that other appellate courts have found a *prima facie* case to have been established when 5 out of 6 peremptory challenges were used against the defendant's racial group, *Minniefield v. State,* 539 N.E.2d 464 (Ind.1989); *Conerly v. State,* 544 So.2d 1370 (Miss.1989), when 7 out of 10 were so used, *United States v. Mitchell,* 877 F.2d 294 (4th Cir.1989), and when 12 out of 15 were so used. *People v. Sandy,* 150 A.D.2d 625, 542 N.Y.S.2d 12 (N.Y.A.D. 2 Dept.1989). It has been held that the use of 12 peremptory challenges to remove every black person from the venire makes out a *prima facie* case, *Avery v. State,* 545 So.2d 123 (Ala.Crim.App.1988), but that the use of 7 peremptory strikes to accomplish the same result does not. *People v. Mahaffey,* 128 Ill.2d 388, 132 Ill.Dec. 366, 539 N.E.2d 1172 (1989). One court has held that when 2 black people serve on a jury, no *prima facie* case of racial discrimination arises from the use of 4 out of 6 peremptory challenges against blacks, *Everett v. State,* 27 Ark.App. 228, 769 S.W.2d 421 (1989), while another has held that with 2 blacks on the

a factual issue of deliberate exclusion was fairly raised by the evidence.

The judgment below is reversed and the cause remanded for further proceedings consistent with this opinion.

WHITE, J., concurs in the result.

McCORMICK, Presiding Judge, dissenting.

A prima facie case has been defined as one

> "[s]uch as will suffice until contradicted and overcome by other evidence. [citation omitted]. A case which has proceeded upon sufficient proof to that stage where it will support finding if evidence to contrary is disregarded. [citation omitted]." *Blacks Law Dictionary*, 4th Edition.

As the majority correctly notes, the defendant must establish a "prima facie case that the prosecutor in fact made racially motivated strikes against eligible veniremembers" before the prosecutor must explain the use of his peremptory strikes. In reviewing the "relevant circumstances" presented by the instant record, I cannot conclude that a prima facie case is made. The only evidence presented was that four of six black venirepersons were struck peremptorily by the prosecutor.

Absent *any other factors*, it cannot be said that such statistics reasonably establish an inference of purposeful discrimination on the part of the State. It seems grossly unfair to engage in such a presumption against any officer of the court.

It seems well settled that *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, holds that, after establishing that the defendant is a member of a cognizable racial group and that the trial prosecutor has exercised his peremptory challenges in order to re-

move from the venire members of the defendant's race, in order to establish a prima facie case of purposeful racial discrimination on the part of the trial prosecutor in the exercise of his peremptory challenges, *a defendant must then also show* that these facts and circumstances raise an inference that the trial prosecutor used that practice to exclude the veniremembers from the petit jury on account of their race. *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723.

In the case at bar, appellant has failed to show the facts presented raise such an inference. The third prong of *Batson* has not been satisfied.

I respectfully dissent.

---

jury, a *prima facie* case does arise from the use of 3 out of 6 peremptory strikes against black veniremen. *People v. Harris*, 182 Ill.App.3d 114, 130 Ill.Dec. 648, 537 N.E.2d 977 (1st Dist.1989). Our reading of these cases has only convinced us the more that a lenient attitude at the threshold is the best way to effectuate *Batson* in a manner likely to generate consistently acceptable results and to comport with the ordinary processes of proof under our system of jurisprudence, which generally require very little evidence to raise an issue of fact. *See, e.g., Hayes v. State*, 728 S.W.2d 804, 807 (Tex.Crim.App.1987) ("This Court has consistently held that an accused is entitled to an instruction on every defensive issue raised by the evidence ... whether such evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may or may not think about [its] credibility[.]")