IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-494-CR





SAUL G. CARDENAS,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE


 




FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT


NO. CR93-0103-B, HONORABLE BARBARA L. WALTHER, JUDGE PRESIDING



 





PER CURIAM

 A jury found appellant guilty of three counts of delivering heroin and assessed
punishment for each count, enhanced by previous felony convictions, at imprisonment for sixty-five years. Controlled Substances Act, 71st Leg., R.S., ch. 678, sec. 1, § 481.112, 1989 Tex.
Gen. Laws 2230, 2935 (Tex. Health & Safety Code Ann. § 481.112, since amended). The district
court rendered judgment in accord with the verdicts on each count. Appellant brings forward
three points of error, none of which question the sufficiency of the evidence.



1. Jury strikes.

 In his first point of error, appellant complains that the district court erred by
overruling his Batson objection to three of the State's peremptory jury strikes. Batson v.
Kentucky, 476 U.S. 79 (1986); see also Tex. Code Crim. Proc. Ann. art. 35.261 (West 1989). 
Appellant contends venire members Esequiel Castaneda, Joseph Amador, and Sheree Cruz were
struck by the prosecutor because of their Hispanic background. See Hernandez v. New York, 500
U.S. 352 (1991). In considering this point, we will view the record in the light most favorable
to the district court's ruling and will not disturb it unless it is shown to be clearly erroneous. 
Harris v. State, 827 S.W.2d 949, 955 (Tex. Crim. App. 1992). (1)

 There were six venire members with Hispanic surnames. One, Sam Gaitan, was
removed for cause. Two others, Rebecca Fuentes and Caesar Garza, were selected as jurors. See
Linscomb v. State, 829 S.W.2d 164, 167 (Tex. Crim. App. 1992) (that other members of the
group allegedly discriminated against served on the jury militates against a finding of
impermissible discrimination).



 a. Castaneda. 

 The prosecutor gave two reasons for his peremptory strike of Castaneda: the
panelist's dislike of police undercover operations and informers, and the fact that the panelist wore
sunglasses throughout the voir dire. Appellant argues that the prosecutor's stated concern
regarding Castaneda's dislike of undercover operations was merely a pretext for ethnic
discrimination. In his brief, appellant asserts that "Castaneda was the only prospective juror the
prosecutor specifically questioned about undercover operations without first volunteering that he
had reservations with this area. This is disparate examination, per se." See Keeton v. State, 749
S.W.2d 861, 866 (Tex. Crim. App. 1988) (showing of disparate examination of challenged juror
weighs heavily against legitimacy of race-neutral explanation for strike). The relevant portion of
the prosecutor's voir dire examination is as follows:



 Now, many cases dealing with -- with drugs in the area of drug
enforcement involve officers going, what we call, undercover. I'm sure you've
probably heard that term used before. And essentially that officer is assuming the
role of someone else and is out there undercover, literally, in attempting to buy
drugs or buying drugs, whatever. That may give some people some reservations,
but essentially what we're doing is we're asking a law enforcement officer to
misrepresent himself in order to do his job.


 Now, the law says that's perfectly okay. There's no prohibition against a
certified peace officer doing that. I want y'all to think about that a little bit
because if anyone has any problems with that, I need to know that now.


 And I'll just take it again row by row. Anybody on the first row?


 Mr. Castaneda, what do you think about that? Do you think that police
ought to do that type of thing, go undercover, represent, say to the people that,
"Hey, I'm a drug user. I'm going to buy drugs." You think that's okay or police
shouldn't do that?



Castaneda responded that he was "not sure, really" how he felt about police undercover
operations, and the prosecutor turned his attention to the other panelists. 

 Appellant's assertion that Castaneda did not raise his hand or otherwise respond
to the prosecutor's question is not supported by the record. But even if we assume that appellant's
assertion is correct, disparate examination of Castaneda is not shown. During his examination
of the jury panel, the prosecutor asked several panelists questions that were not follow-ups to 
volunteered remarks. For example, the prosecutor asked James Edwards if he thought "we're
doing a good job with our rehabilitation" of criminals, asked Harold Vaughn if he had
"encountered any problems concerning drug abuse" in his job, and asked Lyndon Ivey, "[C]ould
you tell me what entrapment is? Could you describe a situation where we're talking about
entrapment?" The prosecutor also asked several panelists for their opinions about "legalizing
drugs" and for their thoughts on "the most important thing we can teach our kids." In light of the
manner in which the prosecutor conducted his examination of the entire panel, we find no basis
for concluding that he deliberately singled out Castaneda for questioning in hopes of finding a
pretext for striking him.

 Four venire members, including Castaneda, were examined individually after
questioning of the full panel was concluded. During this questioning, Castaneda indicated that
while he believed there was something inherently wrong about undercover operations, he could
put this view aside and follow the court's instructions. He also stated that he had cousins and a
brother who were police officers. Appellant contends that these statements show Castaneda to
have been a "good" juror from the State's point of view. The issue presented by appellant's point
of error, however, is not whether the peremptory strike against Castaneda was logical or wise,
but whether the strike was the product of ethnic discrimination. 

 Appellant was arrested after selling heroin to an undercover officer. The officer
was introduced to appellant by two informers. That the prosecutor would not want a juror who
harbored reservations about such police tactics is a reasonable and race-neutral explanation for a
peremptory strike. The overruling of appellant's Batson objection was not clearly erroneous with
regard to Castaneda. (2)



 b. Amador and Cruz.

 The prosecutor said that he struck Amador and Cruz because of their age. Both
were twenty years old, and the prosecutor was of the opinion based on his experience that "you
don't get good punishment out of jurors that are young." By "good punishment," we assume the
prosecutor meant long prison terms. Appellant points out, however, that both panelists, when
questioned by the prosecutor, expressed a willingness to assess the maximum punishment of
imprisonment for ninety-nine years in an appropriate case. Appellant concludes that the
prosecutor's explanation for striking Amador and Cruz was based on a group trait that was shown
not to apply to them. See Keeton, 749 S.W.2d at 866 (failure to show that group trait applies to
challenged juror weighs heavily against legitimacy of race-neutral explanation based on group
bias). 

 Five members of the jury panel were aged twenty or younger. (3) The prosecutor
asked each of these panelists if he or she could consider the maximum punishment. Each panelist
answered affirmatively. Despite these assurances, each was peremptorily struck by the
prosecutor. Because the prosecutor's treatment of Amador and Cruz was consistent with his
treatment of the other, non-Hispanic panelists of the same age, there is no evidence of disparate
treatment to undermine the prosecutor's stated explanation for the challenged strikes. See
Chambers v. State, 866 S.W.2d 9, 24-25 (Tex. Crim. App. 1993). 

 Batson and its progeny leave room for the exercise of peremptory challenges on
the basis of legitimate "hunches" and past experience, so long as racial, ethnic, or sexual
discrimination is not the motive. Keeton, 749 S.W.2d at 865; see J.E.B. v. Alabama, 128 L. Ed.
2d 89 (U.S. 1994). Appellant does not contend that it is unlawful to exercise peremptory strikes
on the basis of age. While Amador and Cruz may not have conformed to the prosecutor's
preconceptions regarding the willingness of youthful jurors to assess a lengthy punishment, their
age has not been shown to have been a pretext for ethnic discrimination. The overruling of
appellant's Batson objection was not clearly erroneous with regard to Amador and Cruz. Point
of error one is overruled.



2. Motion for new trial.

 Appellant next contends that the district court erred by refusing to grant his motion
for new trial on the ground that the jury received other evidence after retiring to deliberate. Tex.
R. App. P. 30(b)(7). To mandate a new trial, it must be shown that other evidence was received
by the jury and that this evidence was detrimental to the defendant. Garza v. State, 630 S.W.2d
272, 274 (Tex. Crim. App. 1981); see Moody v. State, 827 S.W.2d 875, 899 (Tex. Crim. App.
1992).

 Officer Teofilo Garcia, Jr., testified that he purchased heroin from appellant on
three occasions in September, October, and November 1992 while working undercover in San
Angelo. Garcia identified the contents of State's exhibits 2, 3, and 4 as the heroin in question. 
Attached to exhibit 3 was an evidence card with blanks filled in by the officer to show the case
number, exhibit number, date of purchase, sealing official, and witnessing official. The officer
also wrote appellant's name on the card. When exhibit 3 was offered in evidence, appellant
objected that the writing on the evidence card constituted hearsay. At the direction of the court,
the evidence card, which could not be removed from the exhibit, was folded and taped to hide the
writing. It is undisputed that after the jury began deliberating, a juror cut the tape and unfolded
the evidence card, thereby permitting the jurors to read its contents.

 Appellant argues that by unfolding and reading appellant's name as it appeared on
the exhibit card, the jury received evidence not previously before it. Appellant urges that this
evidence was detrimental to him because it tended to confirm Garcia's testimony that appellant
sold the heroin.

 Our examination of the record convinces us that the jury already knew that
appellant's name appeared on the exhibit card. When the three exhibits containing the heroin
were offered in evidence, defense counsel questioned the officer as follows:



Q. Where on Exhibit Number 4 -- I'm sorry, Exhibit Number 2. Where on
Exhibit Number 2 is there a notation as to the origin of that exhibit?


A. You're talking about the origin, what are you referring to?


Q. Did you place any notation on that Exhibit Number 2 indicating from whom
you obtained it?


A. No, sir. I put the exhibit number, the date and the time.


Q. Okay. But you put notations on Exhibit Numbers 3 and 4 relating to Mr.
Cardenas, didn't you?


A. Yes, sir, that is correct.


Q. But you didn't on Exhibit Number 2?


A. It appears that I did not, that's correct.


Q. And it's your ordinary procedure, is it not, to note down on evidence that
you've obtained the person from whom you've obtained?


A. That is correct.



Through this questioning by defense counsel, the jury was informed that appellant's name
appeared on State's exhibits 3 and 4. When the jurors later unfolded the exhibit card attached to
exhibit 3 and saw appellant's name printed thereon, they did not receive "other evidence" because
they already knew that his name was on the exhibit. 

 The only information on the exhibit card that the jurors did not already know was
the specific case and exhibit number assigned to the evidence, and the name of the witnessing
official. We fail to see how these facts could have been detrimental to appellant, and he does not
contend that they were. Point of error two is overruled.


3. Jury argument.

 Appellant's last point of error is that the prosecutor appealed to ethnic prejudice
during his jury argument at the punishment stage when he said:



 Teo gets tired of arresting these people. I get tired of prosecuting them. 
You can help us out. You send that man to prison for life, I guarantee it
everybody in that jail's going to know about it and every street dealer on the south
side of town's going to know about it, on the north side of town, on the west side
of town, on the east side of town, they're all going to know. And they're going
to know that if they commit these types of offenses in your community, they're
going to have to pay the price.



Appellant asserts that the prosecutor paused after mentioning the south side of town, that the
residents of the south side of San Angelo are predominately Hispanic, and that the effect of the
argument was to ask the jury to take sides against the Hispanics of the city. Appellant did not
object to the argument at trial and did not make this contention in his motion for new trial.

 The only support in the record for appellant's contention is the testimony of juror
Caesar Garza at the hearing on appellant's motion for new trial. Defense counsel was questioning
Garza about alleged prejudicial remarks by jurors during deliberations:



Q. Did Mr. Cardenas' Hispanic heritage get discussed during sentencing
deliberations?


A. Yes, sir, it did.


Q. Tell us what was said about his Hispanic heritage.


A. Again it went back to the language situation, language problem that he didn't
take the stand and he didn't speak English and he should have learned how to
speak English. I don't know, it -- Mr. Brown [prosecutor] made a comment
during closing statements that was discussed in the room about sending a
message to the Southeast part of town. And there was a very long pregnant
pause. And then Mr. Brown added the other portions of the town in there. 
And this was a short discussion in there also.


Q. What did that mean to you?


A. To me that meant the Hispanic neighborhoods and the Hispanic barrio here in
San Angelo.



The foreman of appellant's jury, James Edwards, testified at the new trial hearing that he did not
hear any discussion of appellant's ethnic background or any disparaging remarks about Hispanics
generally during deliberations. In eight of the ten affidavits from the remaining jurors that were
admitted in evidence, including the affidavit from Rebecca Fuentes, the jurors stated that no racial
or ethnic slurs or comments were made during deliberations. The other two affidavits were silent
on this question.

 Appeals to racial or ethnic prejudice have no place in jury argument. Allison v.
State, 248 S.W.2d 147 (Tex. Crim. App. 1952). Appellant correctly points out that such appeals
have, on occasion, led to reversals even in the absence of a trial objection. Texas Employers' Ins.
Ass'n v. Haywood, 266 S.W.2d 856 (Tex. 1954); Texas Employers' Ins. Ass'n v. Guerrero, 800
S.W.2d 859 (Tex. App.--San Antonio 1990, writ denied). In those cases, however, the words
spoken during argument obviously sought to incite racial or ethnic prejudice. In this cause, on
the other hand, the argument of which appellant complains appears on its face to be a legitimate
plea for law enforcement. To support his claim, appellant relies on one juror's interpretation of
the prosecutor's statement. 

 Accepting as true Garcia's testimony that he was offended by the prosecutor's
remark, there is nothing in the record before us to support the conclusion that the prosecutor
engaged in a deliberate appeal to ethnic prejudice during jury argument. The argument was not
so manifestly improper as to excuse appellant's failure to object. Point of error three is overruled. 


 The judgments of conviction are affirmed.


Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Affirmed

Filed: September 14, 1994

Do Not Publish

1.   Because the prosecutor stated his reasons for the challenged strikes and the district
court ruled on the ultimate question of ethnic discrimination, we need not decide whether
appellant initially established a prima facie showing of impermissible discrimination. Hill
v. State, 827 S.W.2d 860, 865 (Tex. Crim. App. 1992).
2.   Because we find this to be an adequate basis for upholding the district court's ruling,
we do not address the prosecutor's second stated reason for striking Castaneda. 
3.   In addition to Amador and Cruz, these panelists were Cheryl Vogt, Ken Flippin, and
Tracy Hicks.