CR5-647.DARNELL.DRAFT 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00647-CR







Robert Earl Darnell, Appellant




v.




The State of Texas, Appellee








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT


NO. 0954026, HONORABLE GRAINGER McILHANY, JUDGE PRESIDING







PER CURIAM

 

 A jury found appellant Robert Earl Darnell guilty of murder. The jury also found that
appellant had been convicted of two prior felonies as alleged in the indictment and assessed punishment
at life in prison. Appellant raises six points of error. By one point of error, appellant complains that the
trial court erred by denying his request for a Batson hearing. By five points of error, appellant contends
that the trial court erred during the punishment phase of trial by (1) allowing the State to violate a motion
in limine; (2) commenting on the weight of the evidence; (3) making certain evidentiary rulings; and (4)
failing to instruct the jury at punishment regarding certain matters. We will affirm the trial-court judgment.


Background


 Because appellant does not challenge the sufficiency of the evidence, we briefly review the
facts. Appellant and Minnie Wright lived together off and on for eight or nine years. Wright had asked
appellant to move out about a month before the alleged offense occurred. On March 7, 1995, Jacquelyn
Clay went to visit Wright. Appellant stopped by and asked to come in. The three watched television and
talked for a while. During the conversation, appellant asked Wright if he could move back in with her; she
refused. Appellant went to the kitchen and returned with a knife. Wright screamed and ran up against a
wall. Appellant ran at Wright and stabbed her two times. Wright pleaded with appellant for her life and
then asked him to bring her a glass of water because she thought she was about to die. As appellant went
back into the kitchen, Wright ran out of the apartment to a neighbor's apartment. As she ran out of the
apartment, Wright saw Clay lying on the bed. The police arrived and found Clay lying on the bed. She
had been stabbed three times, in the breast, side, and back.


Batson Hearing


 By appellant's fifth point of error, he contends that the trial court erred by refusing to
conduct a Batson hearing. After all of the jury strikes were made and the remainder of the panel was
dismissed, but before the jury was sworn, appellant objected to the State's striking one of the three African
Americans on the venire. Appellant argued that striking one-third of the African Americans on the panel,
as well as the fact that the person struck was about the same age and race as appellant, was prima facie
evidence that the strike was racially motivated. Of the three African Americans on the venire, one served
on the jury, one was struck by the State using a peremptory strike, and the other was beyond the last strike
to be selected for the jury. The court denied appellant's request for a hearing and ruled that appellant failed
to make a prima facie showing that the peremptory strike was racially motivated.

 We review the trial court's denial of appellant's Batson challenge using a clearly erroneous
standard to determine whether the denial is adequately supported by the record. Salazar v. State, 818
S.W.2d 405, 408 (Tex. Crim. App. 1991). In doing so, we must examine the evidence in the light most
favorable to the trial court's rulings. Id.

 A defendant must make a prima facie showing of discrimination; by raising an inference of
"purposeful discrimination" on the part of the State. Batson v. Kentucky, 476 U.S. 79, 96 (1986); Tex.
Code Crim. Proc. Ann. art. 35.261 (West 1989). Once a defendant establishes a prima facie case that
the State's peremptory challenge was racially motivated, the State is required to explain its reasons for the
strike. Linscomb v. State, 829 S.W.2d 164, 165 (Tex. Crim. App. 1992).

 It is not onerous to establish a prima facie case of racial discrimination--the defendant need
only present relevant evidence with "more than a modicum of probative value." Id. at 166. The defendant
is entitled to rely on the fact, about which there can be no dispute, that peremptory challenges constitute
a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Id. 
Additionally, the defendant must show that these facts and any other relevant circumstances raise an
inference that the prosecutor used that practice to exclude the veniremen from the jury on account of their
race. Id.

 Appellant contends that a statistical analysis of the State's strikes establishes his prima facie
case. Appellant contends that the prosecutor used 10% of its peremptory challenges to eliminate 30% of
the prospective jurors belonging to a certain racial group that comprised 6% of the challengeable panel. 
The bare fact of strikes above exercised against persons of a certain race does not necessarily reveal the
work of a racially prejudiced mind, but a repetition of strikes in suspiciously high numbers may indicate a
racially discriminatory motive. Linscomb, 829 S.W.2d at 165. Additionally, the fact that a member of the
excluded race served on the jury does not eliminate the possibility that the defendant established a prima
facie case of discrimination. Id. at 167. Under Batson, courts are not to be occupied with the extent to
which members of an identifiable race were actually represented on the jury, "but with whether the State
was racially motivated in the exercise of its peremptory challenges against even one venire member of a
discernible race." Id. A purely statistical analysis can be enough to create a prima facie case of racial
discrimination. Id.

 In this instance the statistics support the State. Statistically, the numbers are as close as
possible. The three African Americans comprised approximately 10% of the venire. When dividing the
number of African Americans by 32 to obtain the number of strikes the State might use against African
Americans, it appears that the State statistically could have struck one African American. That is exactly
what the State did. We hold that appellant did not make a prima facie showing of racial discrimination and
the trial court did not err by denying appellant a Batson hearing. We overrule point of error five.


Punishment Phase


1. Motion in Limine

 By point of error one, appellant contends that the trial court erred by allowing the State to
violate a motion in limine. Appellant complains that the State violated the trial court's instructions about
approaching the bench before asking questions related to appellant's 1977 conviction for attempted armed
robbery. Appellant seeks a new punishment hearing.

 Following a pretrial hearing, the court granted appellant's motion in limine regarding the
previous offense. The court instructed the attorneys that if they wanted to go into the 1977 offense, they
would first need to approach the bench. During the punishment phase, while the State was cross-examining
appellant, the State asked appellant about the 1977 offense without asking to approach the bench. 
Appellant's attorney immediately objected to the question and asked the trial court if the two attorneys
could approach the bench. The trial court dismissed the jury and heard appellant's objections to the State's
question regarding the 1977 offense out of the jury's presence. The trial court overruled appellant's
objections and allowed the State to continue questioning appellant.

 We note that the trial court stopped the proceedings, dismissed the jury and heard
appellant's complaints. Only after giving appellant the opportunity to explain why testimony about the 1977
offense should be excluded did the trial court allow the State to continue its questioning. We agree with
appellant that the State did not follow the trial court's instructions given during the pretrial hearing on the
motion in limine. However, the trial court allowed both sides to present their arguments on the admissibility
of the 1977 offense outside the jury's presence. The State's violation of the motion in limine was harmless.

 Appellant also contends that the trial court never ruled on the relevancy of the 1977
conviction. However, as related above, the trial court held a hearing outside of the jury's presence and
allowed both parties to express their views about why the evidence should or should not be admitted. The
State argued that appellant opened the door to his prior criminal history by testifying about other previous
offenses. The State contended that the 1977 offense was admissible under 37.07 as prior criminal history. 
Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a) (West Supp. 1997). Appellant, argued that the offense was
inadmissable because it was too remote since it occurred more than ten years earlier. See Tex. R. Crim.
Evid. 609.

 We hold that the trial court did not err by allowing the State to question appellant about
the 1977 offense. Appellant opened the door about his criminal history by testifying during direct
examination about his other offenses. The 1977 offense was a part of his criminal history admissible
pursuant to article 37.07. We overrule point of error one.


2. Comment on Weight of Evidence

 By point of error two, appellant contends that the trial court improperly commented on the
weight of the evidence and violated various provisions of the federal and state constitutions as well as
articles 38.05 and 36.16 of the Texas Code of Criminal Procedure. U.S. Const. amend. V, VI, VIII; Tex.
Const. Ann. art. I, §§ 15, 19 (West 1997); Tex. Code Crim. Proc. Ann. arts. 38.05, 36.13 (West 1979
& 1981).

 The State introduced evidence that it claimed had been introduced earlier by the admission
of Exhibits 14 and 15, appellant's pen packets relating to appellant's two prior enhancement convictions
alleged in the indictment. Appellant objected. The trial court, in overruling appellant's objection, stated
before the jury, "The Court has noted that the defendant has answered untrue as to both facts and the
objection is overruled." (Emphasis added.) Appellant did not object to the trial court's statement. 
Appellant argues that the trial court improperly noted for the jury that the true "facts" were shown in the
pen packets and that the facts appearing in the pen packets were the same facts that appellant earlier
denied. Appellant argues that the trial court let the jurors know his opinion that what was reflected in the
pen packets were the true facts.

 To preserve error for appellate review, a party must make a timely objection, stating the
specific ground for the ruling sought, and obtain a ruling on the record from the trial court. See Tex. R.
App. P. 52(a). Appellant failed to object to the trial court's statement. Consequently, appellant waived
any error regarding the trial court's statement. Tex. R. App. P. 52(a). Even constitutional errors may be
waived by a failure to object at trial. Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). 
We overrule point of error two.


3. Admission of Extraneous Bad Acts 

 By point three, appellant contends that the trial court erred by permitting the admission of
an extraneous bad act referred to in a penitentiary packet used to prove a prior conviction alleged in the
indictment. The State responds that appellant failed to object timely. Appellant contends that he objected
as soon as he recognized that the extraneous act had been included in the exhibit and contends that the trial
court erred by overruling his objection.

 State's Exhibit 14 consists of appellant's penitentiary packet for the 1984 burglary
conviction in cause number 73,846 alleged in paragraph III of the indictment. This offense was committed
on February 10, 1984. The exhibit also contains the following documents relating to a burglary committed
by appellant on January 8, 1983, cause number 69,364: (1) a judgment of probation, (2) a motion to
revoke probation and (3) an order revoking probation. The order revoking probation for the January 8
burglary refers to the February 10 burglary as well as a February 14, 1984, burglary. Appellant complains
about the reference to the February 14 burglary that appears in the motion to revoke probation.

 The State introduced evidence of several prior convictions, including a burglary committed
on October 4, 1990, and a theft and an assault with bodily injury on April 22, 1994. Additionally, the State
introduced evidence showing that appellant was currently charged in the county court for evading arrest
following his conviction for a theft that occurred on April 22, 1994.

 Appellant lodged his objection after the exhibit had been admitted, the sponsoring witness
excused, another witness examined and excused, and the trial court recessed overnight. An objection must
be voiced at the earliest opportunity. Whalon v. State, 725 S.W.2d 181, 189 (Tex. Crim. App. 1986). 
Appellant's objection was not voiced when the exhibit was introduced into evidence. The objection was
not timely and any error in the admission of Exhibit 14 was waived. Id.; Tex. R. App. P. 52(a). We
overrule point of error three.

4. Evidence of How Long Appellant Served In Prison

 By point of error four, appellant complains that the trial court erred by allowing the State,
over his objection, to introduce evidence of how long appellant had been in prison serving his sentences. 
Appellant contends that admission of this evidence constituted the improper admission of parole evidence.

 The first time the State asked appellant how long he had gone to prison he answered, "I
was in prison, I was sentenced to five years. I did two and-a-half on the five. Went in '83 and came out
in '85." Appellant did not object to this testimony. Appellant has failed to preserve this complaint for
appeal. Tex. R. App. P. 52(a).

 The State then inquired about appellant's next conviction asking how long he had served
in prison on that sentence. Appellant objected that the State was improperly going into the "details or the
length of sentence." The State responded that the length of sentence was already admitted. Appellant
replied that while the exhibits were properly admitted, they speak for themselves and the State could not
go into the details of the exhibit after its admission.

 Appellant's trial objections differ from his point of error urged on appeal. Appellant's
complaint on appeal regards an improper reference to parole while at trial his objections related to whether
the State could go into the details of an already admitted exhibit. In order for an issue to be preserved on
appeal, there must be a timely objection which specifically states the legal basis for the objection. Rezac
v. State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990) (citing, e.g., Zillender v. State, 557 S.W.2d
515, 517 (Tex. Crim. App. 1977)). An objection stating one legal basis may not be used to support a
different legal theory on appeal. Id. We overrule point of error four.


5. Failure to Instruct the Jury

 By point of error six, appellant complains about the omission from the punishment charge
of an assignment of a burden of proof on the extraneous offenses the State introduced during the
punishment phase of trial. Appellant contends that, as a matter of due process, the trial court was required
to instruct the jury that they could consider the admitted extraneous offenses in assessing punishment only
if each juror was convinced beyond a reasonable doubt that appellant was in fact guilty of those offenses.

 During punishment, the court admitted into evidence documents referring to a conviction
for a 1990 burglary, a 1994 assault and theft, and a charge currently pending in county court for evading
arrest related to the 1994 theft. Appellant initially pleaded "untrue" to the allegations, but later testified and
admitted his convictions. At the punishment charge conference, appellant made no request or objection. 
The punishment charge given required that the jury find beyond a reasonable doubt that appellant was the
same person who was convicted of the prior offenses as alleged before assessing his punishment.

 Because appellant neither requested more complete instructions nor objected to any
omission, he must show that he was egregiously harmed by the omission. Almanza v. State, 686 S.W.2d
157 (Tex. Crim. App. 1984). Appellant contends that the harm he suffered was that the jurors were free
to decide appellant's guilt of the previous offenses by a lesser standard and include their conclusion of his
guilt in their punishment determination. We hold that appellant was not egregiously harmed by the lack of
an instruction on the burden of proof for the extraneous offenses. The penitentiary packets were admitted
and appellant testified that he committed the offenses. We overrule point of error six.


Conclusion


 We affirm the judgment of conviction.


Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed

Filed: April 10, 1997

Do Not Publish



wing that appellant was currently charged in the county court for evading arrest
following his conviction for a theft that occurred on April 22, 1994.

 Appellant lodged his objection after the exhibit had been admitted, the sponsoring witness
excused, another witness examined and excused, and the trial court recessed overnight. An objection must
be voiced at the earliest opportunity.