Reversed and Remanded and Opinion filed July 28, 2011.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00067-CR

____________

 

ADBIHAKIM
HASSAN, Appellant

 

V.

 

THE
STATE OF TEXAS, Appellee

 



 

On Appeal from the
County Criminal Court at Law No. 14

Harris
County, Texas

Trial Court Cause
No. 5473

 



 

OPINION

Appellant Adbihakim Hassan appeals
from the county criminal court at law’s affirmance of his conviction of a
misdemeanor traffic offense in municipal court.  We reverse and remand.

Factual
Background

Appellant was charged with a misdemeanor offense of failing to stop at a
clearly marked stop line while facing a red light. He pleaded “not guilty.”  At
the jury trial in municipal court, Officer William Lindsey of the Houston
Police Department testified that he saw appellant, who was driving a taxi cab,
stopped at a red light intersection in Houston. Officer Lindsey described how
appellant turned left from Westheimer onto Fountainview from the lane next to
the left-turn lane while the traffic light for his lane remained red.  No
officer directed appellant to make the turn, and no sign or other traffic
indicator gave appellant authority to make the left turn.  Sergeant Ed Brian
Robinson, who was on patrol with Officer Lindsey and who issued the citation to
appellant, confirmed this testimony.

The jury convicted appellant of the charged offense, and the court assessed
a fine of $200.  Appellant filed a motion for new trial, which was denied.  He
then appealed to the county criminal court at law.[1]  The county
criminal court at law affirmed the conviction.  

In considering issues presented in appellant’s brief in this court, we made
a preliminary determination that appellant had made a prima facie
showing of racial discrimination in the State’s exercise of peremptory strikes
in jury selection.  We abated the case and ordered the municipal court to
conduct a full Batson hearing.  Following a hearing, the municipal court
concluded that the State did not engage in purposeful racial discrimination and
denied appellant’s Batson motion.  A record of the hearing and the
municipal court’s findings of fact and conclusions of law were filed with this court. 
This court reinstated the case, and we now consider the merits of the issues
raised in appellant’s brief.

Issues
Presented

In this de novo appeal, our review is limited to those issues considered
by the county criminal court at law.  See Tex. Gov’t Code Ann. § 30.00027(b)(1) (in an appeal from a
municipal court of record, the record and briefs from the appeal to the county
court constitute the record and briefs at the court of appeals).  Appellant challenges
the sufficiency of the evidence to support his conviction, the trial court’s
denials of his motion to quash the complaint, motion for deferred disposition, and
denial of his Batson challenge as well as an evidentiary ruling on an
officer’s testimony. 

Sufficiency
of the Evidence

Under his seventh issue, appellant asserts that the
evidence is legally and factually insufficient to sustain the conviction.  In
evaluating a legal-sufficiency challenge, we view the evidence in the light
most favorable to the verdict.  Wesbrook v. State, 29 S.W.3d 103, 111
(Tex. Crim. App. 2000).  The issue on appeal is not whether we, as a court,
believe the State’s evidence or believe that appellant’s evidence outweighs the
State’s evidence.  Wicker v. State, 667 S.W.2d 137, 143 (Tex. Crim. App.
1984).  The verdict may not be overturned unless it is irrational or
unsupported by proof beyond a reasonable doubt.  Matson v. State, 819
S.W.2d 839, 846 (Tex. Crim. App. 1991).  The trier of fact “is the sole judge
of the credibility of the witnesses and of the strength of the evidence.”  Fuentes
v. State, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999).  The trier of fact may
choose to believe or disbelieve any portion of the witnesses’ testimony.  Sharp
v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).  When faced with
conflicting evidence, we presume the trier of fact resolved conflicts in favor
of the prevailing party.  Turro v. State, 867 S.W.2d 43, 47 (Tex. Crim.
App. 1993).  Therefore, if any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt, we must affirm.  McDuff
v. State, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

A majority of the judges of the Texas Court of
Criminal Appeals have determined that “the Jackson v. Virginia legal-sufficiency
standard is the only standard that a reviewing court should apply in
determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable
doubt.”  Brooks v. State, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010)
(plurality op.) (Hervey, J., joined by Keller, P.J., Keasler, and Cochran,
J.J.); id. at 912–15 (Cochran, J., concurring, joined by Womack, J.)
(same conclusion as plurality).  Therefore, in this case, we review the
evidence under the Jackson v. Virginia standard as articulated in
the preceding paragraph.  

The specific statute appellant is alleged to have violated provides as
follows:

(d) An operator of a vehicle facing only a steady red
signal shall stop at a clearly marked stop line. In the absence of a stop line,
the operator shall stop before entering the crosswalk on the near side of the
intersection. A vehicle that is not turning shall remain standing until an
indication to proceed is shown. After stopping, standing until the intersection
may be entered safely, and yielding right-of-way to pedestrians lawfully in an
adjacent crosswalk and other traffic lawfully using the intersection, the
operator may:

(1) turn right; or 

(2) turn left, if the
intersecting streets are both one-way streets and a left turn is permissible.

Tex.
Transp. Code Ann. § 544.007(d) (West 2011).[2] 

Officer Lindsey testified that the intersection where appellant was
ticketed is located in “Houston, Harris County” and that Westheimer and
Fountainview are not both one-way streets, at which a left turn on a red light
would have been permitted.  He explained that at that intersection, Westheimer
has four lanes and a single left-turn lane.  Appellant’s vehicle was not in the
left-turn lane, but in the lane next to it, designated as the “No. 1 lane.”  According
to Officer Lindsey, the light in the left-turn lane changed to a green arrow,
and appellant turned left.  The light for appellant’s lane remained red.  Appellant
was stopped at the red light in a lane designated for traffic proceeding
straight.  Officer Lindsey testified that he could see clearly that the light
was red and that appellant turned left from this lane, which was next to the
left-turn lane. Appellant then proceeded southbound on Fountainview.  Officer Lindsey
testified that no officer had directed appellant to turn, and there was no
other sign, device, or indicator giving appellant the authority to turn left
from the lane his vehicle occupied.  Based on his observations over a period of
“quite some time,” Officer Lindsey believed the light was working properly. 
Sergeant Robinson confirmed that appellant was facing a red light westbound on
Westheimer when appellant turned left onto Fountainview.  Sergeant Robinson testified
that the light was “cycling properly,” and he had seen it functioning several
times while on patrol that night. This evidence is sufficient to support
appellant’s conviction.  Appellant’s seventh issue is overruled.  

Denial
of Motion to Quash

In his first and second issues, appellant asserts that the municipal
court improperly denied his motion to quash the complaint.  Appellant argues that
the jurat in the complaint’s oath is fundamentally defective because it bears a
date shown as “7-25-05,” using an abbreviated two-digit year instead of using
four digits.  

We review the decision on a motion to quash under an abuse-of-discretion
standard.  See Thomas v. State, 621 S.W.2d 158, 163 (Tex. Crim. App. 1981);
State v. Goldsberry, 14 S.W.3d 770, 772 (Tex. App.—Houston [1st Dist.]
2000, pet. ref’d).  A trial court abuses its discretion if it acts without
reference to guiding rules and principles, or acts arbitrarily or unreasonably.
 Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (op. on
reh’g).  

A complaint is a sworn allegation charging the accused with the
commission of an offense in justice and municipal courts.  Tex. Code Crim. Proc. Ann. art.
45.018(a) (West 2006).  A complaint is sufficient if it shows that the accused
has committed an offense against the law of the state.  Id. art.
45.019(a)(4) (West 2006).  A motion to quash should be granted only when the language
concerning the defendant’s alleged conduct is so vague or indefinite as to deny
him effective notice of the acts he allegedly committed.  DeVaughn v. State,
749 S.W.2d 62, 67 (Tex. Crim. App. 1988).

The particularity in pleading required for an
indictment or an information is not required for a complaint, and a complaint
will not be dismissed due to a mere informality.  Kindley v. State. 879
S.W.2d 261, 263 (Tex. App.—Houston [14th Dist.] 1994, no pet.).  The complaint
in this case substantially complies with the requirements of the Code of
Criminal Procedure.  See Tex.
Code Crim. Proc. Ann. art. 45.019(a).[3] 
Subsection (e)(2) to article 45.019 provides that a complaint in municipal
court may be sworn to before “the clerk of the court or a deputy clerk.”  Id.
art. 45.019(e)(2).  This complaint was sworn to by the “deputy Clerk Municipal
Court, Houston, Texas” on “7-25-05.” Well-defined and well-understood
abbreviations may be used in an indictment, jurat, or complaint without
rendering the instrument defective.  Andrade v. State, 662 S.W.2d 446,
448–49 (Tex. App.—Corpus Christi 1983, pet. ref’d) (holding complaint’s jurat
containing commonly abbreviated date was adequate).  We conclude that the jurat
in this case is sufficient.  The trial court did not abuse its discretion in
denying appellant’s motion to quash the complaint.  We overrule appellant’s
first and second issues.  

Jury
Selection

In his fourth and fifth issues, appellant asserts that the trial court
erred in denying his challenge to the State’s peremptory strikes of three
venire members.  Under Batson v. Kentucky, a party may not exercise
peremptory strikes during jury selection to exclude a potential juror solely on
the basis of race.  476 U.S. 79, 86, 106 S. Ct. 1712, 1717, 90 L. Ed. 2d 69
(1986).  A defendant objecting that the State has violated Batson must
make a prima facie showing of racial discrimination in the State’s
exercise of its peremptory strikes.  See Herron v. State, 86 S.W.3d 621,
630 (Tex. Crim. App. 2002).  If the defendant makes a prima facie
showing, a presumption arises that the peremptory challenges were used to
discriminate on a racial basis, and the burden then shifts to the State to come
forward with race-neutral explanations for the strikes.  Id. 

To establish a prima facie case under Batson, a defendant
must show (1) that the State exercised its strikes to exclude members of a
cognizable racial group from the venire, and (2) that this fact along with any
other relevant facts and circumstances raise an inference that the State
exercised these strikes against the venire members because of their race.  See
Batson, 476 U.S. at 96.  The defendant need not share the stricken venire
members’ race.  See Powers v. Ohio, 499 U.S. 400,
405–16 (1991).  Undisputed observations and uncontradicted statements of trial
counsel can provide support in the record for a prima facie showing.  See
Yarborough v. State, 947 S.W.2d 892, 895 (Tex. Crim. App. 1997); Emerson
v. State, 820 S.W.2d 802, 804 (Tex. Crim. App. 1991); Greer v. State, 310
S.W.3d 11, 14 (Tex. App.—Dallas 2009, no pet.).  In determining whether a prima
facie case is reflected in the record, courts should not resolve the
question of deliberate racial discrimination on the merits by assessing the
probative weight of competing inferences or conflicting evidence but are simply
to decide whether the issue has been raised.  Linscomb v. State, 829
S.W.2d 164, 167 (Tex. Crim. App. 1992).  “The burden of establishing a prima
facie case of disparate treatment is not onerous.” 
Id. (quoting Tex. Dep’t of Comm. Affairs v. Burdine, 450 U.S.
248, 253 (1981)).  

During the hearing of appellant’s Batson motion, the trial court
permitted appellant to state for the record that venire members 2, 3, 6, 8, and
11 appeared to be African American; venire members 5 and 7 appeared to be
Asian; venire members 1, 10, 12, and 13 appeared to be Hispanic; and venire
members 4, 9, and 14 appeared to be Caucasian.  According to the record, the
trial court agreed with these statements.  The State did not object to
appellant’s references to the venire members’ races.  Appellant also stated
without objection that the State exercised strikes against two of the five African
American venire members, numbers 2 and 8.  The record reflects that the State
exercised a strike against one of the Asian venire members, number 5.  The
record also reflects that appellant exercised a strike against venire member 5.
 Hence, the record supports appellant’s contention that the State used
peremptory strikes on two of the five African American venire members;
likewise, of the two Asian venire members, the State and appellant both
exercised strikes against the same one.[4]

A pattern of exercising strikes against venire members of a particular
race may establish a prima facie case.  See Keeton v. State, 749 S.W.2d
861, 867 (Tex. Crim. App. 1988).  “[T]he bare fact of strikes exercised against
persons of a certain race does not necessarily reveal the work of a racially
prejudiced mind.”  Linscomb, 829 S.W.2d at 166.  “What may be revealing,
however, is a repetition of such strikes in suspiciously large numbers—numbers
larger than one would expect if race had nothing to do with it.”  Id.  In
Linscomb, nineteen percent of the venire members who could be
effectively stricken were African American, and the State used forty percent of
its peremptory strikes to remove four of the six African American venire
members.  Id. at 165.  The Court of Criminal Appeals concluded, “[T]he
prosecutor exercised peremptory challenges against [African American]
veniremembers at more than twice the rate one would expect from a random
selection.  Because she was not made to reveal her actual motives, we have no
reason to suppose that this disproportionately large number was merely
coincidental.”  Id. at 166.

We acknowledge this case differs from Linscomb because the venire
was smaller and the State had fewer peremptory strikes.  Nevertheless, under
these facts, appellant met his minimal burden to raise an inference of
discrimination in jury selection.  African Americans comprised five of the
fourteen venire members (thirty-six percent), but the State used two of its
three strikes (sixty-six percent) to remove two African American members.  Of
the two Asian venire members on the panel (fourteen percent), the State used
its last strike to remove one Asian venire member, the same one against whom
appellant exercised a strike.  

In support of his prima facie showing, appellant noted that venire
member 5 was an accountant and, when asked during voir dire to offer her
opinion of defense attorneys, she ranked defense attorneys as a “5” on a scale
of 1-10.  According to appellant, these facts tended to make panel member 5 a
more favorable juror for the State and, therefore, an unlikely strike by the
State.  Appellant also noted that panel member 2 ranked his opinion of police
officers as an “8” on a scale of 1-10.  Appellant urged that, given panel
member 2’s very high opinion of police, he was an unlikely strike for the
State.  Finally, appellant indicated that panel member 8 was a technological
professional, who seemed to be an unlikely strike for the State.

Based upon the foregoing analysis, we concluded in a prior abatement
order that appellant made a prima facie showing of racial
discrimination.  See id. (explaining that the minimum evidence necessary
to establish a prima facie case “is any relevant evidence with more than
a modicum of probative value”); Flores v. State, 33 S.W.3d 907, 925
(Tex. App.—Houston [14th Dist.] 2000, pet. ref’d) (“The burden [to make a prima
facie case] is not onerous; only minimal evidence is needed to support a
rational inference.”); see also Marx v. State, 953 S.W.2d 321,
332 (Tex. App.—Austin 1997) (abating case for Batson hearing where
State used two of its six peremptory strikes to exclude two of the three African
American members on a twenty-eight person venire), aff’d 987 S.W.2d 577
(1999).  We ordered this case abated and instructed the municipal court to
conduct a hearing and make the determinations prescribed by Batson.  See
Hutchinson v. State, 86 S.W.3d 636, 638–39 (Tex. Crim. App. 2002) (“[W]e
have long abated appeals and remanded cases to the trial court to conduct a Batson
hearing when the trial court had erroneously denied such a hearing after the
requisite prima facie showing had been made.”).  After doing so, the
municipal court concluded that the State did not engage in purposeful racial
discrimination by striking two of the five African American venire members and
by striking one of two Asian venire members.  We now review the municipal
court’s ruling.

If an accused makes a prima facie showing, a presumption arises
that the peremptory challenges were used to discriminate on a racial basis, and
the burden then shifts to the State to come forward with race-neutral
explanations for the strikes.  See Herron, 86 S.W.3d at 630.  A
race-neutral explanation is based on something other than the race of a potential
juror.  Hernandez v. New York, 500 U.S. 352, 360, 111 S. Ct. 1859, 114 L.
Ed 2d 395 (1991).  Once the State has articulated a race-neutral
explanation, the burden shifts back to the accused to show that the State’s
explanations are actually a pretext for discrimination.  See id.  The
trial court then must determine whether the accused carried the burden of
proving discrimination.  See Herron, 86 S.W.3d at 630.  Because the
trial court’s decision often turns on an evaluation of credibility, we give the
trial court’s decision great deference and will not overturn it on appeal
unless it is clearly erroneous.  Id.  We review the record of the Batson
hearing and the voir dire examination in the light most favorable to the
trial court’s ruling.  Young v. State, 283 S.W.3d 854, 866 (Tex. Crim.
App. 2009).

At the recent Batson hearing, held more than five years after the
trial, the prosecutor testified that he exercised a strike on venire member 5,
who is Asian, because she was a certified public accountant (CPA).  The prosecutor
stated that he never seats a person who works as a CPA on any jury.  In his
view, CPAs tend to overanalyze cases.  In this case, venire member 5 was the only potential juror who
worked as a CPA.  Therefore, the prosecutor offered a race-neutral reason for
striking one of the two Asian venire members.  See Moore v. State, 265
S.W.3d 73, 84 (Tex. App.—Houston [1st Dist.] 2008, pet. dism’d).  

The prosecutor also testified at the Batson hearing that, in examining
the 2005 trial record, he could not recall why he struck venire member 2 and venire
member 8.  The prosecutor explained that he could have exercised a strike
against any venire members if he was not satisfied with the way they reacted to
his voir-dire questions, humor, or joking, or if they did not maintain eye
contact.  On cross-examination, the prosecutor candidly stated that he could
not recall whether venire member 2 or venire member 8, in particular, reacted
in any specific way to his line of questioning.  In response to cross-examination
questions, the prosecutor likewise could not recall anything specific about
these particular venire members, though he added, “I can tell you without a
doubt that I never struck a [potential] juror for an improper reason including
race or sex.  While I cannot sit here and tell you today why they were struck,
I can tell you with certainty they were not struck for any improper reason.” A
prosecutor may not rebut the presumption merely by denying that he had a
discriminatory motive or by “affirming his good faith in individual
selections.”  Batson, 476 U.S. at 97, 106 S. Ct. at 1723–24; see
Brooks v. State, 802 S.W.2d 692, 694–95 (Tex. Crim. App. 1999).  In the
absence of a specific recollection and explanation, a prosecutor's good faith
belief that he acted in accordance with his general practices and in a
race-neutral way is not sufficient to meet the State's burden. See Brooks,
802 S.W.2d at 694–95.

In proffering
an explanation to rebut the presumption, it was incumbent upon the prosecutor
to articulate a clear, specific, and legitimate explanation for the challenge
of each African American venire member on whom the State exercised a peremptory
strike. Id. Moreover, the record must expressly and affirmatively
reflect the non-discriminatory explanation.  Id.  Though it is
understandable, given the passage of time, that the prosecutor would not have a
specific recollection, the inescapable conclusion is that the State has failed
to demonstrate that its exercise of peremptory strikes against venire members 2
and 8 was based on permissible race-neutral justifications.  See id. (involving
a prosecutor who was unable to proffer any reason for striking two African
American venire members).  Because the prosecutor could not recall why peremptory
strikes were used on these two venire members and offered no explanation
relevant to this particular case, the State did not meet its burden of producing
a specific race-neutral explanation for the strikes.  See id.  

If a trial court erroneously concludes that
a defendant has not made a prima facie showing of racial discrimination
in the State’s exercise of peremptory strikes, the appellate court might not
order a full Batson hearing until years after the trial, as occurred in
the case under review.  In these circumstances, the State’s files might not
reflect the reasons for the peremptory strikes, and the State might not be able
to articulate a specific race-neutral explanation either because the prosecutor
is unavailable or because the prosecutor does not remember the reasons for the
strikes.  See id.  Under these circumstances, the State has failed to
meet its burden under Batson, requiring the appellate court to reverse
the conviction and remand for a new trial, even though the prosecutor, in fact,
may not have exercised the State’s peremptory strikes in a racially
discriminatory manner.  See id.  Accordingly, it would be prudent for a
trial court to allow a full Batson hearing if there is any substantial
argument as to whether the defendant made a prima facie showing of
racial discrimination in the State’s exercise of peremptory strikes.  By
proceeding in this fashion, the court could create a record while memories are
fresh and thereby avoid a potential reversal and retrial based upon a failure
of memory that likely would occur if the trial court erroneously concludes that
a defendant has not made a prima facie showing of racial
discrimination.  

Because the State failed to demonstrate a clear and
reasonably specific, legitimate race-neutral reason for its peremptory strikes
of the specified two African American venire members, the trial court’s
determination was clearly erroneous as to these two peremptory strikes.  See
id.  Accordingly, appellant’s challenge to the court’s Batson ruling
is sustained.[5]  The judgment of the county criminal court at law is
reversed, and this case is remanded to the municipal court for a new trial.  

 

                                                                                                

                                                                                    /s/        Kem
Thompson Frost

                                                                                                Justice

 

 

 

 

Panel
consists of Chief Justice Hedges and Justices Frost and Christopher.

Publish — Tex. R. App. P. 47.2(b).

 









[1]
See Tex. Gov’t Code Ann. § 30.00014 (West 2004).  





[2]
In appellant’s brief, he erroneously describes the offense as “failure to yield
right-of-way entering a private drive.”  In his sufficiency argument, however,
he discusses the correct offense.





[3]
A complaint is sufficient, without regard to its
form, if it substantially satisfies the following requisites:

(1) it must be in writing;

(2) it must commence “In the name and by the authority
of the State of Texas”; 

(3) it must state the name of the accused, if known,
or if unknown, must include a reasonably definite description of the accused;

(4) it must show that the accused has committed an
offense against the law of this state, or state that the affiant has good
reason to believe and does believe that the accused has committed an offense
against the law of this state;

(5) it must state the date the offense was committed
as definitely as the affiant is able to provide;

(6) it must bear the signature of mark of the affiant;
and

(7) it must conclude with the words “Against the peace
and dignity of the State” and, if the offense charged is an offense only under
a municipal ordinance, it may also conclude with the words “Contrary to the
said ordinance.”

Id. art. 45.019(a).  





[4] We presume, without
deciding, that appellant may raise a Batson challenge to the striking of
venire member 5 even though appellant exercised a peremptory strike on that
member of the venire. 





[5] Inasmuch as this court's
ruling on the Batson challenge is dispositive, we need not reach
appellant's third or sixth issues, the sustaining of which would offer no
greater relief.